### ROBY *v.* COLEHOUR AND ANOTHER.

### ROBY *v.* COLEHOUR.

### ROBY *v.* COLEHOUR AND ANOTHER.

### ROBY *v.* COLEHOUR AND ANOTHER.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Nos. 990, 987, 988, 989. Submitted May 2, 1892. — Decided November 7, 1892.

In error to a state court, although it may not appear from the opinion of the court of original jurisdiction, or from the opinion of the Supreme Court of the State, that either court formally passed upon any question of a Federal nature, yet, if the necessary effect of the decree was to determine, adversely to the plaintiff in error, rights and immunities in proceedings in bankruptcy, claimed by him in the pleadings and proof, the jurisdiction of this court may be invoked on the ground that a right or immunity, specially set up and claimed under the Constitution or authority of the United States, has been denied by the judgment sought to be reviewed.

A bankrupt who purchases from his assignee in bankruptcy real estate to which he held the legal title at the time of the assignment is not thereby discharged from an obligation to account to a third party for an interest in the land as defined in a declaration of trust by the bankrupt, made before the bankruptcy, but takes title subject to that claim.

Whether such relations existed between the bankrupt and such third party

as prevented him from acquiring such absolute title, discharged from all obligations growing out of the declaration of trust, is not a Federal question.

THIS was a motion to dismiss. The case is stated in the opinion.

*Mr. Henry S. Monroe* and *Mr. William C. Goudy* for the motions.

*Mr. John M. Palmer* opposing.

MR. JUSTICE HARLAN delivered the opinion of the court.

The principal facts appearing upon the present motion to dismiss these writs of error for want of jurisdiction in this court or to affirm the decrees, are as follows:

By deed of date of July 18, 1871, Henry F. Clarke and others conveyed to William H. Colehour certain lands in Cook County, Illinois, embracing those here in dispute, subject to a mortgage for $4000 held by Mary P. M. Palmer. The sum of $10,000 was paid in cash, and the grantee executed his notes, aggregating $86,000, for the balance of the purchase money; and, for the purpose of securing them, executed a deed conveying the lands to V. C. Turner in trust. William Hansbrough, Charles W. Colehour, Wesley Morrill and Francis M. Corby were interested in the profits to be derived from their sale. Hansbrough sold and assigned his interest to Charles W. Colehour and Edward Roby; and Charles W. Colehour acquired the interests of Corby and Morrill. Roby executed to Hansbrough his notes for $4400, and subsequently paid them. The Colehours and Roby made an arrangement for subdividing and selling the property. That arrangement was evidenced by a written declaration of trust made by William H. Colehour in October, 1873, which Charles W. Colehour and Edward Roby accepted, and by which it was provided, among other things, that after the payment of all sums due on the notes secured on the land, and all moneys advanced for its

development, Roby should be entitled to one-fourth, Charles W. Colehour to one-half, and William H. Colehour to one-fourth of the net profits. Subsequently, a part of the land was subdivided and improved by grading streets, making ditches, etc., and a part sold, freed from the lien created by the deed of trust given to Turner.

It may be here stated that another writing was produced bearing date August 16, 1873, and purporting to be a declaration of trust with respect to this property.

Charles W. Colehour, September 22, 1876, released and conveyed to William H. Colehour all his right, title and interest in certain lands, including those here in controversy; and, subsequently, August 30, 1878, filed his petition in bankruptcy, showing debts to the amount of over $800,000. Having been adjudged a bankrupt, he conveyed his property and interests of every kind, according to the course and practice of the court, to an assignee in bankruptcy; and thereafter — the answer of Roby in the principal case alleges — " said Charles W. Colehour had no right or interest therein." The same answer, referring to this petition in bankruptcy, further states: " Said Charles W. Colehour having in 1876, for a sufficient and valuable consideration, conveyed all his interest in and to said land and all claims thereon to said William H. Colehour, and having no interest in said land or the proceeds thereof, or in the title in said William H. Colehour, did not mention the same or any part thereof in his inventory filed in said District Court of the United States in such proceeding in bankruptcy; and said Charles W. Colehour had not, at said date, to wit, on the 30th day of August, 1878, any right, title or interest in or to, or claim on, said lands, or any of the proceeds thereof."

Roby, August 31, 1878, filed his petition in bankruptcy. Having been adjudged a bankrupt, he conveyed, September 7, 1878, all his assets to his assignee, and afterwards, November 23, 1880, was discharged from all debts and claims provable against his estate existing on the day his petition in bankruptcy was filed.

On the 1st day of May, 1879, William H. Colehour executed to Charles W. Colehour a deed, covering the lands in dispute,

subject to the terms of certain declarations of trust which the grantor had previously made.

On the 30th of January, 1890, Charles W. Colehour brought a suit in equity (the principal one of the above cases) in the Circuit Court of Cook County, Illinois, against Edward Roby and William H. Colehour. For the purposes of the present hearing it is only necessary to state that the theory of the bill was that Roby, by fraud and in violation of his obligations as attorney for the plaintiff and the defendant, William H. Colehour, had acquired, at execution sales and otherwise, the legal title to the lands in dispute, embraced by the deed of trust of October, 1873; and that if not barred in equity by his acts and conduct from claiming any interest in them, he was entitled to only one-quarter of the net profits after all debts and liens against them were paid. The relief prayed was a decree declaring a certain deed from W. H. Colehour to Roby to be void, and that it be set aside as a cloud upon the title of the plaintiff and W. H. Colehour; that a receiver be appointed to whom should be conveyed the titles claimed by the respective parties; that the lands b sold and the proceeds held subject to the final decree in the cause; that the plaintiff and W. H. Colehour be decreed to be the owners of the equity of redemption; and that such other relief be given as was agreeable to equity.

The defendants answered the bill, and W. H. Colehour filed a cross-bill for a decree establishing the interests of the parties to be one-fourth in Roby and W. H. Colehour, each, and one-half in Charles W. Colehour.

In his answer to the original bill, which stood as his answer to the cross-bill, Roby denied that he had acted in bad faith, or that the relation of attorney and client existed between him and the Colehours, or either of them, at the time he purchased the lands in dispute. Referring to the proceedings in bankruptcy against him, his answer alleged that after the 31st day of August, 1878, the date of the filing of his petition in bankruptcy, "to wit, on the 4th day of February, A.D. 1882, the assignee in bankruptcy of this defendant sold the assets of this defendant, including all his interest derived

under the said declarations of trust, unto this defendant, and duly assigned and conveyed the same, including all interest in the said lands embraced in said declarations of trust from said William H. Colehour to this defendant, and said sale was duly approved and made absolute by the said District Court; and from thenceforward this defendant has been the owner of said declaration of trust from said William H. Colehour to this defendant, and also of an undivided half of the said declaration of trust from said William H. Colehour to William Hansbrough, and of all interests and claims arising under the same, or either of them."

The court, while acquitting Roby of any actual or intentional fraud, held that, consistently with the relations existing between him and the Colehours, he could not, at the time of acquiring the titles under which he claims, buy the lands and hold them adversely to those jointly interested with him. Judge Tuley, delivering the opinion of the Circuit Court of Cook County, said: "The law will hold Mr. Roby to be a trustee for the Colehours, for C. W. Colehour to the extent of one-half, and W. H. Colehour one-quarter, of all the property so purchased by him under or through such judgment proceedings, he, however, to be refunded the moneys which he has paid therefor. He cannot hold the property; because he must be treated as acquiring it while the relation of attorney and client existed."

A decree, in accordance with these views, was entered, appointing a receiver of the property, requiring Roby, William H. Colehour and Charles W. Colehour to convey to him all the titles to the lands respectively acquired or held by them, etc.

At the same time the court dismissed for want of equity certain suits — three of the suits mentioned in the title to this opinion — which Roby had instituted for the recovery of part of the lands under the titles which, as stated, he had acquired by purchase at execution sales and otherwise. These suits had been previously consolidated with the suit, just above mentioned, brought by Charles W. Colehour.

Upon appeal to the Supreme Court of Illinois, the decrees

of the Circuit Court of Cook County were affirmed. The several cases have been brought here for review upon writs of error. In the record is a certificate of the Chief Justice of the Supreme Court of Illinois, in which it was stated that the court decided:

1. That, in opposition to the contention of Roby, the proceedings whereby he was adjudged a bankrupt and discharged from his obligations, etc., " did not operate in law or equity to discharge said Roby from all his obligations, liabilities, duties and trusts with respect to and growing out of his interest in said lands and of his relations to said parties."

2. That Roby claimed and insisted that under and by virtue of the provisions of the laws of the United States he, as purchaser from his assignee in bankruptcy, took such interest as a stranger, free and clear from any duties or obligations or connections existing, prior to his petition in bankruptcy, between him and the Colehours, or either of them, and that the above deed of May 1, 1879, was void, both as to his assignee in bankruptcy and to him as purchaser from such assignee, and passed no right to Charles W. Colehour; " but this court [the Supreme Court of Illinois] decided against all the said claims so made by said Roby, and also decided that such deed was and is valid against said assignee in bankruptcy, and against said Roby as purchaser from such assignee."

3. That Roby insisted that by the proceedings in bankruptcy against Charles W. Colehour the latter was divested of all interest in and claims upon the lands in his present bill mentioned or the profits thereof, and of all interest in common with W. H. Colehour or either of them, and that he, Roby, was by operation thereof exempted from all claims of Charles W. Colehour and from his suit on account of said land, and that the necessary effect of such record and proceedings in bankruptcy was that he was not chargeable to Charles W. Colehour; " but this court," the certificate of the Chief Justice proceeds, " in considering the law and facts of the cases, decided against the claims of said Roby so pleaded, claimed and insisted on, and decided that such was not the legal operation and effect of such proceedings; and that Charles W. Colehour

had a right to sue upon said instrument, dated May 29, 1873, [being a power of attorney from William H. to Charles W. Colehour;] that said deed dated May 1, 1879, was and is valid as against said assignee in bankruptcy and against said Roby as purchaser from said assignee, and gives said Charles W. Colehour the right to defend the first three above-entitled cases against said Roby and to prosecute the fourth against said Roby, and to claim and enforce all rights of partner, trustee and co-tenant against said assignee in bankruptcy of said Roby and against said Roby as purchaser from such assignee."

Has this court jurisdiction to review the decree in these consolidated causes under the statute, (Rev. Stat. § 709,) providing that "a final judgment or decree in any suit in the highest court of a State where any title, right, privilege or immunity is claimed under the Constitution, or any . . : authority exercised under, the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed by either party, under such Constitution, . . . or authority, may be reexamined and reversed or affirmed in the Supreme Court upon a writ of error?"

This question is a close one. But although it does not appear from the opinion of the court of original jurisdiction, or the opinion of the Supreme Court of Illinois, that either court formally passed upon any question of a Federal nature, the necessary effect of the decree was to determine, adversely to Roby, the rights and immunities claimed by him, in the pleadings and proof, under the proceedings in bankruptcy to which reference has been made. We must not be understood as holding that the certificate from the Chief Justice of the latter court is, in itself, and without reference to the record sufficient to confer jurisdiction upon this court to reëxamine the judgment below. Our jurisdiction being invoked upon the ground that a right or immunity, specially set up and claimed under the Constitution or authority of the United States, has been denied by the judgment sought to be reviewed, it must appear from the record of the case either that the right, so set up and claimed, was expressly denied, or that such was the

necessary effect in law of the judgment. *Parmelee* v. *Lawrence*, 11 Wall. 36, 38; *Brown* v. *Atwell, Administrator*, 92 U. S. 327, 329; *Gross* v. *United States Mortgage Co.*, 108 U. S. 477, 485; *Felix* v. *Scharnweber*, 125 U. S. 54, 59. The present case may be held to come within this rule. In view of the certificate by the Chief Justice of the state court, the office of which, as said in *Parmelee* v. *Lawrence*, was, as respects the Federal question, "to make more certain and specific what is too general and indefinite in the record," we are not disposed to construe the pleadings so strictly as to hold that they did not sufficiently set up and claim the Federal rights which that certificate states were claimed by Roby, but were withheld, and were intended to be withheld, from him by the court below.

While the motion to dismiss must, therefore, be overruled, yet, as there was color for it, we must inquire whether the questions on which jurisdiction depends are such as, in the language of our rule (6), not to need further argument. We are of opinion that they are of that class. When Charles W. Colehour was adjudged a bankrupt he does not appear to have held any interest in the lands now in controversy. The answer of Roby distinctly states that he, Charles W. Colehour, in 1876, for a sufficient and valuable consideration, conveyed all his interest to W. H. Colehour, and had no interest in said lands at the date of his petition in bankruptcy filed in 1878. The decree is evidently based, so far as Charles W. Colehour is concerned, upon the deed to him by William H. Colehour, executed in 1879, although the respective interests of the parties were established with reference to the declaration of trust made in October, 1873. There is, consequently, no ground upon which to rest the contention that Charles W. Colehour had any interest or right in the lands that passed to his assignee in bankruptcy.

Equally without force is the contention that the adjudication of Roby to be a bankrupt, followed by his conveyance to his assignee in bankruptcy, and his purchase from such assignee, had any effect upon the rights of William H. Colehour or Charles W. Colehour. The respective interests of

Roby and the Colehours in the lands, at the date of Roby's bankruptcy, could have been determined in a suit or proceeding to which they and Roby's assignee in bankruptcy were parties, so that the purchaser at the assignee's sale would have acquired a title discharged from any claim upon them by either of the Colehours. But it does not appear that any such suit was brought or that the conflicting interests of the parties were determined as between them, or either of them, and Roby's assignee in bankruptcy. Roby's claim is that his purchase of the lands from his assignee in bankruptcy, the legal title to which was in him, of record, discharged him from all obligation to recognize any claim, upon the part of either of the Colehours, arising out of the relations existing between them and him prior to his bankruptcy. If, at the time of filing his petition in bankruptcy, he was bound by his relations to the Colehours, although holding the legal title, to account to them for their portions of the lands, as defined in any previous declaration of trust to which he was a party or to which he assented, or by which he was bound, he was not discharged from that obligation by merely purchasing the lands from his assignee in bankruptcy. It does not appear that any issue was framed and determined in the bankruptcy court as between him or his assignee and the Colehours. The conveyance to his assignee passed to the latter only such interest as he, in fact, had, and when he bought from the assignee he purchased only such as he could rightfully have conveyed, originally, to his assignee. If, before he went into bankruptcy, the Colehours had any interest in the lands, which they could assert, as between themselves and him, he could not, by simply purchasing it from his assignee, acquire an absolute title, freed from their claim. We are of opinion that the proceedings in bankruptcy against Roby, and the purchase from his assignee, did not defeat the claims now asserted by the Colehours in these lands, and which were recognized by the decree below.

Whether such relations, in fact, existed between the Colehours and Roby as prevented him, consistently with those relations, from purchasing the lands for himself, in other

words, whether he was the attorney of the Colehours when he acquired the legal title, or whether, upon principles of equity, Roby should be deemed to have acquired the title for them and himself, subject to the declaration of trust referred to in the pleadings and decree, are not questions of a Federal nature. The decree below, in respect to those matters, is not subject to reëxamination by this court. The Federal questions having been decided correctly, and those questions being such as not to need any further argument beyond that presented in the briefs of counsel, the decree in each of the cases must be

*Affirmed.*