## POWELL *v.* BRUNSWICK COUNTY.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF
VIRGINIA.

No. 898. Submitted November 20, 1893. — Decided December 4, 1893.

This court must determine for itself whether it has jurisdiction under Rev.
Stat. § 709, to review the judgment of a state court; and the certificate
of the presiding judge of the State that a state of case exists for the
interposition of this court cannot, of itself, confer jurisdiction upon it
to reëxamine a judgment of that court.

It is essential to the maintenance of the jurisdiction over the judgment of
the state court upon the ground of erroneous decision as to the validity
of a state statute or a right under the Constitution of the United States,
that it should appear from the record that the validity of such statute
was drawn in question, as repugnant to the Constitution, and that the
decision sustained its validity, or that the right was specially set up or
claimed, and denied.

It is well settled, that the construction put upon a state statute by the
highest court of the State will generally be followed by this court, unless
it conflicts with the constitution, or a Federal statute, or a general rule
of commercial law.

Applying these rules it was *held* that the construction put by the Supreme
Court of Appeals of the State of Virginia in *Taylor* v. *Supervisors,* 86
Virginia, 506 upon the provision in the charter of the Atlantic and Dan-
ville Railway Company considered in this suit, leaves no Federal ques-
tion for this court.

MOTION to dismiss. This was a bill of complaint filed by
R. S. Powell and fourteen others, resident citizens and tax-
payers of the county of Brunswick, suing on behalf of them-
selves and all other citizens and taxpayers of the county,
making themselves parties, March 25, 1889, in the Circuit
Court of the county of Brunswick, in the State of Virginia,
against the board of supervisors of that county and the
Atlantic and Danville Railway Company, to enjoin the dis-
position of certain bonds of the county, theretofore issued to
the company; the doing of any act by means whereof the
county might become bound as a subscriber to the capital
stock of the company; and to adjudge all the proceedings of
every kind whereby it had been attempted to bind the county
as such subscriber to be irregular, null, and void.

· Under an act of the general assembly of Virginia, approved April 21, 1882, the Atlantic and Danville Railway Company was chartered and authorized to construct a line of road from a point on the James River, in Surry County, by a designated route to the city of Danville, and it was provided that certain designated counties (including the county of Brunswick) along the proposed road might subscribe to the capital stock of the company. At a general election held on the fourth Thursday, being the 24th day of May, 1883, the question of subscription was submitted to a vote of the qualified voters of the county, under an order of the county court, "in accordance with the provisions of sections 62 and 63, chapter 61, Code of Virginia, 1873," and return having been made by the judges of election to the court, commissioners were appointed to canvass with the clerk the ballots and report thereon.

The board discharged this duty, canvassed the ballots, reported the result, and further reported "that three-fifths of the qualified voters of the county voting upon the question were in favor of subscription, and that said three-fifths includes a majority of the votes cast by freeholders at the election and a majority of the registered voters of the county." This report was returned to the office of the county clerk and admitted to record June 13, 1883.

By an act of the general assembly of Virginia of January 15, 1875, (Sess. Laws Va. 1874, 1875, p. 29, c. 37,) it was provided that whenever the sense of the qualified voters of any county should be taken on the question of whether the board of supervisors should subscribe to the stock of any internal improvement company, the returns of such elections or the decision of the voters should be subject to the inquiry, determination, and judgment of the county court upon the written complaint of fifteen or more of the qualified voters of the county of an undue election or false return, to be filed within thirty days after the election, and the court to proceed upon the merits and to determine concerning the same according to the constitution and laws of the State. Such a complaint was filed in reference to this vote, June 21; amended; and as amended quashed on June 27, 1883, and on the same day the

county court ordered the board of supervisors to meet July 3, 1883, to carry the wishes of the voters into effect. The meeting was accordingly held on that day and subscription made to the amount of thirty-five hundred dollars per mile for every mile of main line constructed within the county, to be paid in county bonds, payable twenty-five years after date, with interest at six per cent.

Bonds to the amount of seventeen thousand five hundred dollars were issued and delivered to the company January 21, 1889, and application was made in March, 1889, for additional bonds when the complainants filed the bill in question, alleging therein that a large number of the voters of the county were induced to vote for the subscription by false and fraudulent representations made on behalf of the company; that there were gross frauds and irregularities in conducting the election and making the returns, induced by the fraudulent acts of the company, and participated in by the officers of election; that the company was never duly organized and was incapable of making a contract of subscription; that the act incorporating the company was void because in conflict with certain provisions of the state constitution; and averring the illegality of the subscription on other grounds in respect of the charter, amendments thereto, and proceedings thereunder.

The defendant company demurred, and also answered, denying all the allegations of the bill, and alleging the final disposition of most of them adversely to complainants in *Taylor* v. *Supervisors*, 86 Virginia, 506.

The cause having come on for hearing resulted in a decree dismissing the bill. An appeal was taken to the Supreme Court of Appeals of the State, allowed on petition duly presented, and the decree of the Circuit Court was affirmed. Appellants thereupon applied to the president of the Court of Appeals for a writ of error to this court, which was allowed, together with a certificate " that the Federal questions presented by the assignment of errors in the foregoing petition were duly raised by the assignment of errors made and argued by the petitioners in the said Supreme Court of Appeals, (the said Supreme Court of Appeals being the highest court of law

or equity in Virginia in which a decision can be had in said suit,) and that a decision of the said Federal questions was necessary to the determination of said suit and [they] were actually decided by the said Supreme Court of Appeals of Virginia." The opinion of that court is set forth in the record and is reported in 88 Virginia, 707.

The ninth and tenth sections of the act under which the defendant company was incorporated are as follows:

"9. The following counties through which the said railway shall be constructed, to wit: Brunswick, Greensville, Mecklenburg, Surry and Sussex, are hereby authorized to subscribe, according to the forms prescribed by the Code of Virginia of eighteen hundred and seventy-three, to the capital stock of the said Atlantic and Danville Railway Company, to an amount not exceeding thirty-five hundred dollars per mile, for each and every mile of railroad the said company may construct within the limits of the said counties respectively; provided that no part of said subscription made by any of the said counties shall be due or payable until it shall be certified that one mile or more of the said railroad shall have been graded, and the track laid thereon in accordance with the provisions of the tenth section of this act.

"10. That it shall be the duty of the county courts of the several counties named in the preceding section of this act, at the request of the said railway company, or the board of supervisors of any of the said counties, to appoint a commissioner, who, after the commencement of the work of construction in the county, by the said company, shall report to the county court, upon each court day, the number of miles of railroad which the said company has graded and laid the track thereon. Said report shall be certified at once to the board of supervisors of the county, and thereupon the said board of supervisors shall issue or cause to be issued and deliver to the said railway company, bonds of the county, bearing interest not exceeding six per centum per annum, of such denominations as the said railway company may desire, in payment for said subscription for every mile of railroad which, by said report, appears to be graded, and to have the

track substantially laid thereon. The compensation of said commissioners shall be fixed by the courts appointing the same, and shall be paid by the Atlantic and Danville Railway Company." Sess. Laws Va. 1881, 1882, c. 95, pp. 468, 469.

Section 62 of chapter 61 of the Code of Virginia of 1873, applying to "subscriptions by counties, cities, and towns to works of internal improvements," reads thus:

"The county court of any county, or the common council, or board of trustees, of any city or town, or township board of any township, in this Commonwealth, may make an order requiring the sheriff or sergeant, and commissioners of election, at the next general election for state, city, town or county, or township officers, or at any other time, not less than thirty days from the date of said order, which shall be designated therein, to open a poll, and take the sense of the qualified voters, on the question, whether the board of supervisors, council, or board of trustees, or township board, shall subscribe to the stock of any internal improvement company, named in the order, which has been incorporated by the general assembly. The said order shall state the maximum amount proposed to be subscribed, which shall in no case exceed one-fifth of the total capital stock of said company, or an amount, the interest upon which, at the rate authorized by the council, or board of trustees, of any city or town, or board of supervisors of any county, or township board of any township, shall not require the imposition of an annual tax in excess of twenty cents on the one hundred dollars: provided, That the bonds issued by any county, city or town, or township, subscribed to any internal improvement company, shall be received by such company at their par value."

As to counties, by section 63 commissioners of elections, "if there be none otherwise legally appointed," were to be designated to open polls and conduct the election as provided by law in other elections, and the votes for and against subscription were to be counted and return made to the judge of the county court, and the ballots deposited with the clerk of that court, and the clerk and citizens appointed by the judge

were constituted a board whose duty it was to canvass the ballots and make report as prescribed.

By section 64, if it appeared from the report that three-fifths of the qualified voters of the county, voting upon the question, were in favor of subscription, and that said three-fifths included a majority of the votes cast by free-holders at such election, and a majority of the registered voters of the county, the county court was directed to enter of record an order requiring the supervisors of the county "to attend on a day and at a place named in the order, to carry out the wishes of the voters, as expressed at said election."

Under section 65 the board of supervisors were to determine what amount of the capital stock, not exceeding the maximum, should be subscribed for on behalf of the county, to enter the amount on record, and to appoint an agent or agents to make the subscription; which subscription should be paid in such instalments as agreed upon by the board or called for by the company.

By section 66 it was provided that:

"For the purpose of paying the quotas on said stock, or the said instalments, as they may be called for, as fall due, the board of supervisors . . . shall have power to appoint an agent or agents to negotiate a loan or loans, and to issue bonds to secure the payment of the same, for and in the name of said county, . . . which may be either registered or coupon, as may be prescribed; and when the levy is made, .. . . in said county, . . . a tax shall be levied on all property liable to state tax in such county, . . . to pay the amount of such subscription or of such loan, and interest thereon, or to pay the interest on the bonds so issued, and to create a sinking fund to redeem the principal thereof, as the authority ordering the levy or tax may deem necessary or proper; and from year to year said levy or assessment shall be made until the debt and interest are paid. But such levy or assessment for a year shall not exceed one-tenth of the whole amount of such subscription, with the interest thereon." Code Virginia, 1873, pp. 593, 594, 595.

Chapter VIII of the code treated of general and special

elections and the conduct and notice thereof.   General elections were to be held throughout the State on the fourth Thursday in May and on the first Tuesday after the first Monday in November in each year.

*Mr. Richard Walker* and *Mr. Richard B. Davis* for the motion.

*Mr. E. P. Buford* opposing.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The determination of the jurisdiction of this court to review the judgment of a state court under section seven hundred and nine of the Revised Statutes necessarily devolves upon the court itself, and, while the certificate of the presiding judge of the state court as to the existence of the state of case upon which our interposition may be successfully invoked is always regarded with respect, it cannot confer jurisdiction upon this court to reëxamine the judgment below. *Lawler* v. *Walker*, 14 How. 149; *Railway Company* v. *Rock*, 4 Wall. 477; *Parmelee* v. *Lawrence*, 11 Wall. 36; *Caperton* v. *Bowyer*, 14 Wall. 216; *Brown* v. *Atwell*, 92 U. S. 327; *Gross* v. *United States Mortgage Co.*, 108 U. S. 477; *Felix* v. *Scharnweber*, 125 U. S. 54; *Roby* v. *Colehour*, 146 U. S. 153.

In *Parmelee* v. *Lawrence*, Mr. Justice Nelson, speaking for the court, said: "We will add, if this court should entertain jurisdiction upon a certificate alone in the absence of any evidence of the question in the record, then the Supreme Court of the State can give the jurisdiction in every case where the question is made by counsel in the argument.   The office of the certificate, as it respects the Federal question, is to make more certain and specific what is too general and indefinite in the record, but is incompetent to originate the question within the true construction of the 25th section."

As many times reiterated, it is essential to the maintenance of jurisdiction upon the ground of erroneous decision as to the validity of a state statute or a right under the Constitution of the United States, that it should appear from the record that

the validity of such statute was drawn in question as repug-
nant to the Constitution and that the decision sustained its
validity, or that the right was specially set up or claimed and
denied. If it appear from the record by clear and necessary
intendment that the Federal question must have been directly
involved so that the state court could not have given judgment
without deciding it, that will be sufficient; but resort cannot
be had to the expedient of importing into the record the legis-
lation of the State as judicially known to its courts, and holding
the validity of such legislation to have been drawn in question,
and a decision necessarily rendered thereon, in arriving at con-
clusions upon the matters actually presented and considered.

A definite issue as to the validity of the statute or the pos-
session of the right must be distinctly deducible from the
record before the state court can be held to have disposed of
such a Federal question by its decision.

The bill of complaint in this case nowhere claimed relief by
reason of any right, title, privilege, or immunity under the
Constitution of the United States, or because of the violation
by the proceedings in reference to the subscription of any pro-
vision of that Constitution, nor did the petition in error to the
Court of Appeals suggest any Federal question, but in a sup-
plemental brief, filed in that court, it was urged that by sec-
tion nine of the charter of the railway company the designated
counties were authorized to subscribe "according to the forms
prescribed by the Code of Virginia of eighteen hundred and
seventy-three;" that these "forms" were set forth in sections
62, 63, and 64 of chapter 61 of that code; and that by sub-
scription thereunder the property owners of the county would
be deprived of their property "without due process of
law," in violation of the Fourteenth Amendment, for want of
provision in those sections requiring notice of the election to
be given to the voters. The argument seems to have been
that those sections of the code must be read into section nine;
that a valid subscription could not be made without a vote
had as therein prescribed; and that, irrespective of whether
the vote was taken at a general election or upon notice of the
special matter actually given, as notice was not provided for,

the sections were void and no subscription could be made at all.

The difficulty with this contention is that the Supreme Court of Appeals has otherwise construed section 9 of the railroad charter.

In *Taylor* v. *Supervisors*, 86 Virginia, 506, 510, which was the case of a bill filed by the citizens of Greensville County, one of the counties designated in the ninth section, to contest the validity of the subscription of that county, the point was raised and pressed that section 62 was included in the "forms" referred to in the ninth section, but the court decided to the contrary, and, speaking through Hinton, J., said: "The provisions of sec. 62, ch. 61, Code 1873, seem to have been mainly designed to give to the people a definite idea of what is proposed to be done in behalf of the county, and to fix a limit beyond which generally the power to subscribe shall not be exercised. These objects, however, the legislature has evidently seen fit to accomplish, so far as they were practicable, by the provisions of this charter, and we must hold, therefore, that that section of the code has no application to the case. But what, then, are the 'forms prescribed' by the Code of 1873, which the charter directs shall be observed in making this subscription? Why, manifestly, the forms given in sections 65 and 66, ch. 61, Code under the heading 'If subscriptions be voted for, how it is to be made,' etc. In other words, the forms prescribed by the Code of 1873, according to which the subscription is to be made, are those which are to be observed in making the subscription after the voters have declared at the polls that the subscription shall be made." That decision was approved and followed in the case under consideration, the court saying: "The case of *Taylor* v. *The Board of Supervisors of Greensville County*, *supra*, was a controversy arising concerning this same railroad in its construction through the county of Greensville; the identical questions raised here were raised there as to the irregularities of the organization and the subscription of that county, and especially the excess of the subscription in the aggregate, when computing it at the sum of $3500 per mile, as compared to the provisions of the general

law, as set forth in section 62 of chapter 61 of the Code of 1873. But Judge Hinton sufficiently disposes of this objection and apparent difficulty by pointing out that the proceedings here were by virtue of a special act of assembly upon this very subject, passed not only subsequently to the code, but enacted to govern this particular case. The questions raised as to the election are considered and disposed of there, and furnish reasons satisfactory as to this case."

The Fourteenth Amendment was not referred to by the court, and although the conclusion of the opinion, that "on all other questions we are of opinion to affirm the decree appealed from," is broad enough to cover the objection that the statute was in conflict with the Constitution of the United States, we presume that allusion to the subject was thought unnecessary in view of the settled construction of the railroad charter to the contrary of that upon which the supposed conflict depended.

As to that construction, we perceive no reason for declining to accept it in accordance with the general rule applicable to the decisions of the highest court of a State in reference to the laws of the State. *Gormley* v. *Clark*, 134 U. S. 338, 348.

*Writ of error dismissed.*