## MURRAY JACKSON v. THE STATE.

No. 8482.   Delivered May 13, 1925.

Rehearing denied January 27, 1926.

Stay of Mandate, denied March 3, 1926.

1.—Assault With Prohibited Weapon—Indictment—Presence of District Attorney With Grand Jury—Not Improper.

Where, on a trial for an assault with a prohibited weapon, appellant moved to quash the indictment on account of the presence of the district attorney when the grand jury was discussing the propriety of finding this bill of indictment, no error is disclosed.

2.—Same—Continued.

Art. 426 of our C. C. P. forbids the presence of state's attorney while the grand jury are voting on a bill, or while they are discussing the propriety of finding a bill, but Art. 428 of said C. C. P. expressly authorizes the grand jury to seek the advice of the state's attorney in any matter affecting the proper discharge of their duties, or any matter of law about which they may require advice. Nothing appears in this record to show that either the grand jury or the state's attorney transgressed in any way their rights and duty in voting and returning this indictment.

3.—Same—Change of Venue—Properly Denied.

Appellant applied for a change of venue, and the testimony introduced by him in suport of his motion was very voluminous. We have examined and weighed it all very carefully and instead of showing prejudice to exist in the minds of the people of Williamson County or the presence of such combination as might endanger his securing a fair trial, the oposite condition to our minds is made clearly to appear, and the court did not err in refusing to change the venue.

4.—Same—Election by State—Not Necessary.

Appellant complains that the state should have been required to elect between the different acts of the transaction as disclosed by the testimony. We cannot agree to his contention. The indictment charges an assault with a deadly weapon and the proof shows that the assault was a continuous transaction without change from the time that Burleson, the assaulted party, was pulled out of the car until it ended when he was locked to a tree with a chain in Taylor, and a bucket of tar poured over his head, and the words and acts of appellant and his co-actors in said transaction were all admissible, as well as the testimony of those who found Burleson chained to the tree, who narrated his then condition.

5.—Same—Evidence—Of Conspiracy—Properly Admitted.

Where it was shown that a letter written on Klu Klux Klan stationery of a threatening character was delivered to prosecuting witness several weeks prior to the assault, this fact having been referred to by appellant

and his co-conspirators at the time of the assault, there was no error in admitting the evidence as it was a pertinent circumstance supporting the state's theory of a conspiracy on the part of the assaulting parties.

### 6.—Same—Requested Charge—Limiting Testimony—Properly Refused.

Appellant requested a charge that evidence of the fact that he was a member of the Klu Klux Klan could not be considered for any other purpose than as affecting the credibility of witnesses who were shown to be members of the order. We think this charge was properly refused.

### 7.—Same—Continued.

The notice received by Burleson was written on Klu Klux Klan stationery. Burleson was chided for a threat to kill 21 Klansmen. As presented by all of the facts and circumstances of this trial, the membership of appellant and other witnesses in the Klu Klux Klan was a pertinent and material inquiry for the state to disclose, to be considered by the jury as other evidence, and the court was correct in refusing to limit such testimony in the charge.

### 8.—Same—Charge of Court—On Principals—Held, Proper.

Where, on a trial for an assault with a deadly weapon the evidence disclosed that the assault was made by two cars full of men who carried out and apparently planned an agreement to commit this assault upon Burleson, the trial court very properly charged on the law of principals, each and all of those engaged in the assault being, in law, principals.

### 9.—Same—Charge of Court—No Error Shown.

Appellant complains of the charge of the court in eighteen bills of exception, each of which has received our attention, but in none of which do we find any error revealed. All of his defensive issues were clearly and properly given in the main charge and all of his legal rights were fully protected.

### 10.—Same—Challenge of Jurors—For Cause—Properly Overruled.

Where jurors on their voir dire examination testified that they had read Williamson County papers and heard the case discussed, and had an opinion formed from newspaper reading and neighborhood discussion, but had no fixed opinion, and could lay aside such opinion, and try the case solely under the law and the facts, and would not be influenced by whether appellant was, or was not a Klansman, appellant's challenge for cause directed to such jurors was properly overruled. Following McKinney v. State, 31 Tex. Crim. Rep. 583 and other cases cited.

### 11.—Same—Voir Dire Examination—Proper Limitation Of.

Where, on a voir dire examination jurors testify that they have expressed themselves as having formed some kind of an opinion, there is no error in refusing to permit the inquiry of such jurors, as to whether such opinion was unfavorable to appellant, or not.

### 12.—Same—Evidence Admitted—Harmless Error.

While we are unable to assert that it was proper to permit the state to ask the witness Burleson as to his relationship to other members of the Burleson family, in a case where the evidence of guilt is so conclusively

shown the admission of such evidence was not of such a serious nature as to call for a reversal of the case.

### 13.—Same—Evidence—Properly Admitted.

The testimony of the physicians who examined Burleson, the injured party, as to the condition of his body after the assault, and that it was necessary to saw the chain that bound him to the tree in Taylor, and that one of the participants in the assault owned a truck that was seen near where the assault began and that Burleson was hauled into Taylor in a truck, was all material and pertinent, and properly admitted.

### 14.—Same—Argument of State's Counsel—No Error Shown.

Where, in his argument to the jury the district attorney stated in substance that he had heard rumors of a ringer being on the jury, and that he did not believe it, but if there was his fellow jurors would discover it when they retired. We do not regard this argument as improper, and especially in the light of the fact that when it was objected to by appellant, the court instructed the jury not to permit such language to affect their verdict.

### 15.—Same—Misconduct of Jury—Not Established.

Where appellant complains of the misconduct of one of the jurors, who he averred was disqualified because of a prejudgment of the case, and evidence pro and con on the issue was heard by the trial court, we find nothing in the record that would justify us in holding that his determination of the issue was an abuse of his judicial discretion.

### 16.—Same—Evidence—Held Sufficient.

The transcript in this case contains over 600 pages, and the various statements of fact nearly 400 pages. We have gone through all of them in an earnest effort to solve the questions raised, both on the facts, and under the law, and have reached the conclusion that the evidence amply sustains the verdict and that no reversible errors were committed on the trial, and the judgment is affirmed.

ON REHEARING.

### 17.—Same—Court of Criminal Apeals—Its Legal Status.

On rehearing appellant presents that this court is without authority to pass upon his case, by reason of the creation of a commission of appeals to consist of two members, to assist this court in the handling of the business which comes before it, the idea being that the constitution of this state providing that the Court of Criminal Appeals shall consist of three judges, the creation of the commission was in effect the increasing of the number of judges in violation of the constitution, and destroyed the legal status of this court.

### 18.—Same—Continued.

The creation of the commission of appeals, consisting of two members, with the duties and powers prescribed by the legislature, did not make those commissioners members of this court but merely clothed them with powers and duties, which are subordinate to this court, and this creation did not and could not have had any effect on the Court of Criminal Appeals, which still exists with the same legal status which it had

before the creation of the commission, which said creation was within the power of the legislature which called the commission into existence. See People 1. Hayne, 83 Cal. 117; 17 Am. St. Rep. 211 and other cases cited.

### AMENDED MOTION FOR REHEARING

**19.—Same—Writ of Certiorari—To Supreme Court—Refused.** .

Appellant files an amended motion for rehearing, asking for a stay of mandate herein for sixty days to enable him to present his application for a writ of certiorari to the Supreme Court of the United States, the Presiding Judge of this Court having refused to grant a writ of error herein.

**20—Same—Continued.**

A necessary predicate to the invoking of Federal review, is that the state court have been first given an opportunity to pass on the question as to whether there was involved in the particular matter, any Federal question. This is always true when required under the practice of the particular state. See Coffee v. Groover, 123 U. S. 1 and other cases cited.

**21.—Same—Continued.**

That the legislature in creating a commission to aid this court, in any way destroyed or affected the power and right of this court to pass upon appeals regularly before it, by an appellant whose case is not being acted upon by the commission, but by the constituted Court of Criminal Appeals, does not appeal to us as presenting a Federal question that would warrant us in granting a stay of the mandate herein.

**22.—Same—Continued.**

Appellant did not present to this court the supposed conflict of the two state statutes referred to as involving a Federal question, but had it been, we would have held that the question of such conflict did not involve a Federal question, as has been held in numerous cases by the Supreme Court of the United States. See Leeper v. Texas, 139 U. S. 462 and other cases cited.

**23.—Same—Continued.**

We cannot therefore hold that there is any Federal question involved in this case, and in view of the fact that if the Supreme Court of the United States is of a different view, it has the power to stay the proceedings herein, the appellant's motion will be denied.

Appeal from the District Court of Williamson County. Tried below before the Hon. Jas. R. Hamilton, Judge.

Appeal from a conviction of an assault with a prohibited weapon, penalty five years in the state penitentiary.

The opinion states the case.

*W. C. Wofford, Wood & Wood, A. M. Felts, Lewellen Duke* and *W. W. Hair,* for appellant.

*Dan Moody*, District Attorney; *Wilcox & Graves, J. F. Taul-bee, W. H. Nunn, Critz & Lawhon, Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Williamson County of an assault with a prohibited weapon, and his punishment fixed at confinement in the penitentiary for a term of five years.

One Burleson was a salesman, traveling in a car, and in the early part of 1923 made his headquarters for a while at the home of Mrs. Campbell in Williamson County, while he worked adjacent territory. Sometime in January or February a man named Davis came to Mrs. Campbell's and handed Burleson an envelope containing a sheet of paper headed "Georgetown Klan No. 178." In the lower righthand corner of the sheet was a seal around which were the words "Ku Klux Klan." Burleson seems to have paid no attention to the matter. Some weeks afterward, in company with Mrs. Campbell and a Mr. and Mrs. Jones, Burleson was out riding one Sunday afternoon in his car. They were on a public highway. Two cars were in the road ahead of them driving slow. Burleson in his car passed one of said other cars. It was about 6:30 p. m. but the sun was still up. The car in front of Burleson stopped and the one just behind drew up beside his and the men therein told him to stop, which he did. The curtains of both said other cars were up. It was not a rainy day. A number of men got out of the car with pistols in their hands and told Burleson to get out of his car. He asked them what was the idea and they began pulling him out, cursing him and beating him with their pistols. Some one said "Knock him in the head." Burleson testified that appellant was one of those men, that he had a pistol in his hand and struck him, Burleson, with it, but how many blows witness did not know. Still beating him, the men pulled him out of his car and shoved him into one of theirs and put a sack over his head and a rope around one arm. They all got into their cars, those men near him holding pistols in their hands as they drove away. They asked him if he got the notice and what about those twenty-one Ku Klux he was going to kill, etc., etc. When he would start to say anything they would curse him, call him a s-n of a-b and tell him to shut up or they would

knock out his brains. They drove some distance, came to a bridge and some of the party suggested that they stop on the bridge, and they began to get out of their cars, but some one said something about a car and they all jumped back in their cars and renewed their drive. When they finally stopped they took Burleson out of the car, locked a chain around his neck, threatened to castrate him, then led him to a thorn tree, up to which they pulled him by means of the chain, tied his arms behind him, unfastened his trousers, dropped them down, tore his underclothes off of him, took a strap of leather about three inches wide and one by one proceeded to whip him with the strap, one man holding a pistol in his hand and telling Burleson that he would knock him in the head if he hollered. The names they called him are unrepeatable. While whipping him they asked him if he stayed at Mrs. Campbell's after getting the notice, who bought his car for him, etc. He told them that she did not buy it. They beat him harder and harder until he was compelled to answer all their questions in the affirmative, to the effect that she bought the car and that he had been intimate with her, etc., etc. Finally they examined his body and said he was in pretty good shape. Witness said every time they struck him with the strap blood would spurt and that from his knees to above his waist was raw as beef steak. When they quit beating him they put him in the truck, brought him to the town of Taylor, took him to the city hall square, locked the chain which was around his neck to a tree, took the sack off his head, poured a bucket of creosote or tar over his head and left him.

These facts were not denied, appellant relying for his defense upon an alibi. A recital of such facts would seem to sufficiently answer those complaints appearing in appellant's behalf directed at the fact of a verdict returned in fifteen to twenty-five minutes, and the assessment of the maximum penalty of five years.

A motion to quash the indictment was based on alleged presence of the district attorney when the grand jury was discussing the propriety of finding this bill of indictment. The matters in this case are of much public interest and we have taken pains to carefully and fairly sift the facts and authorities relied on by appellant's distinguished counsel in support of their various contentions. Art. 426 of our C. C. P. forbids the presence of the State's attorney while the grand jury are voting on a bill, or while they are discussing the propriety of finding a bill, but Art. 428 of said C. C. P. expressly authorizes the grand jury to

seek the advice of the State's attorney in any matter affecting the proper discharge of their duties, or any matter of law about which they require advice. We find nothing in the testimony adduced in support of appellant's motion to quash the indictment supporting the conclusion that either the grand jury, or the State's attorney, transgressed the bounds of their respective rights and duties in matters pertaining to the finding of this indictment.

Appellant's bill of exceptions No. 2 complains of the refusal of a change of venue. The testimony heard in support of this motion occupies a large part of the transcript. The editors of most, if not all, of the papers of Williamson County, were used as witnesses and copies of various issues of their papers carrying accounts of the investigation and occurrences connected with this case were introduced. Other witnesses were also heard. We have read the testimony of each of these, as well as the statements printed in the papers, and have considered same as fairly as we can together with all the testimony heard by the court on the question of changing the venue, and are not of opinion that there was any error in the action taken in refusing the application. In our opinion the statements made in the papers were conservative and not inflammatory and appear to reflect an effort to acquaint the public with the facts and not with highly colored accounts of the transaction. None of the testimony seems to bring the case within the rules requiring a change of venue. We think that instead of showing such prejudice to exist in the minds of the people of Williamson County, or the presence of such combination as might endanger the rights of this appellant in getting a fair trial, that the opposite is made to appear. Because a given matter, necessarily two sided, and possibly many sided, has been presented by the press and discussed by the people, does not necessarily produce prejudgment. If it did, then men who read and talk with their neighbors and who might be regarded as informed and intelligent men, would be cut off from jury service. Practically none of the witnesses heard by the court expressed it as their belief that appellant could not get a fair trial in the county, and none of them set forth knowledge of such general expression of opinion or discussion of the case or disclosed such condition or sentiment in the minds of the people as to support appellant's contentions in this regard.

By several bills of exception appellant complains that the state was not required to elect between acts and transactions.

The indictment herein charges that appellant while then and there unlawfully carrying on and about his person a certain pistol, with said pistol did unlawfully and wilfully make an assault upon one Burleson. In our opinion the assault was a continuous transaction without change, let or break in the apparent continuity of purpose and execution from the time it began when Burleson was pulled out of the car, until it ended when he was locked to the tree in Taylor and the bucket of creosote or tar poured over his head, and the words and acts of appellant and each and all of his co-actors in said transaction in its entirety were admissible on this trial as well as the testimony of those who found Burleson chained to the tree and narrated his condition and situation. A burglar who murders, rapes or steals while inside the burglarized house, cannot chop the transaction off when the entry into the building is proved. A murderer who kills a watchman, may not compel the stoppage of proof before the theft, rape, arson, etc., subsequent and connected, are narrated.

We think it proper for the state to show the act of Davis in handing to Burleson the letter referred to some weeks before the commission of the assault. It was referred to by parties engaged in the transaction. It thus became a pertinent circumstance supporting the proposition of full understanding and agreement and a conspiracy on the part of those engaged in this entire matter.

By a special charge appellant sought to have the jury told that evidence of the fact that he was a member of the Ku Klux Klan could not be considered for any purpose other than as affecting the credibility of witnesses who were shown to be members of that order. We think such charge properly refused. For aught shown in the bill complaining of such refusal, the fact of appellant's said membership may have been most material to other issues in the case. The notice received by Burleson was on Klan stationery. Burleson was chided for a threat to kill 21 klansmen. In this connection we state with reference to many bills of exception taken to questions asked various witnesses as to whether they or other defense witnesses were members of said secret order, that in our view of the facts of this case and of the testimony of several of the witnesses as to the substance of the oath supposed to have been taken by members of said order, and of the circumstances surrounding the entire transaction, that said questions were proper and that none of said bills show

any error. It was shown in the development of the case that while the grand jury, within the scope of its authority, was investigating this affair, parties apparently having knowledge appeared before said body and refused to answer questions concerning their membership in said organization and were committed to jail for contempt and remained there for a considerable length of time. As affecting the question of the conspiracy and the reason for the acting together of appellant and the other parties composing the mob with him, we think it proper to probe into the matter of their affiliation and connection with each other in this or any other pertinent manner.

In this connection we further observe that in our opinion no error was committed by the learned trial judge in charging the jury on the law of principals. There were two cars full of men who carried out and apparently planned an agreement to commit this entire assault upon Burleson. The act of each man was the act of all. The act of the man who held the pistol on Burleson while he was being whipped, and of those who held pistols on him while he was being carried in the car, and of those men who beat him over the head with pistols and who continued their assault until they left him on the square at Taylor, were, each and all of them in law as we view it, the acts of this appellant, and the jury had the entire right to consider each and every act of each member of the party in determining appellant's guilt and in fixing the penalty to the crime.

By eighteen bills of exception appellant presents complaints of the charge of the court. Each of these has received our attention but in none of them do we find any error. Some were to giving the ordinary definition or definitions of assault; some to that part of the charge wherein the court told the jury that in order to convict appellant the State must prove beyond a reasonable doubt that a pistol was being unlawfully carried by him at the time of the alleged assault. Others were to the submission of the law of principals; still others to the court telling the jury that no issue submitted to them could be decided by lot, and other exceptions were leveled at the charge for telling the jury that appellant's guilt must be decided solely upon the law submitted and the evidence heard. Also to the failure of the court to submit the law of aggravated assault. We have found nothing in any of these bills of ex-

ception whose lengthy discussion or quotation would be of any benefit.

By bill of exceptions No. 31 appellant complains of the fact that his challenge for cause to talesman Edens was overruled and he was compelled to exhaust a peremptory challenge upon him. Mr. Edens was a man of mature years who said he had read a Williamson county paper and had heard the case discussed and had an opinion formed from newspaper reading and neighborhood discussion, but that same was not a fixed opinion. He averred his readiness and willingness to lay aside such opinion and try the case solely under the law and facts. He further averred that whether appellant was or was not a klansman would have no weight with him. We see no abuse of the court's primary right and power to pass on the acceptability of this juror. McKinney v. State, 31 Tex. Crim. Rep. 583; Ashton v. State, 31 Tex. Crim. Rep. 479; Ellison v. State, 12 Tex. Crim. App. 557; Livar v. State, 26 Tex. Crim. App. 115. The bills of exception complaining of the court's refusal to sustain challenge for cause to jurors Price and Carter are based on much the same facts as the bill directed at Mr. Edens.

There are several bills of exception complaining of the fact that appellant's counsel were not permitted to ask said jurors who expressed themselves as having formed some kind of opinion, as to whether such opinion was unfavorable to appellant or not. We think it not proper to ask a witness who says that he has an opinion that would or might influence his action if taken as a juror, as to which side of the case said opinion favors.

There was a question propounded to the witness Burleson touching his relationship to other members of the Burleson family. In a case in which the facts seem so ample to support the conclusion of the jury we would not be inclined to hold the action of the trial court in permitting such evidence, as of such serious nature as to call for a reversal of the case, but see no reason why such testimony should be permitted.

We perceive no error in permitting the testimony of the physicians who examined Mr. Burleson and who testified to the condition of his body, nor to the admission of the testimony of the use of a saw to get the chain from his neck. Proof of testimony showing that Olen Gossett, one of the parties identified as being in the cars at the time and place of the assault, owned a truck and that the truck was seen on

the road and in the neighborhood of the assault on the day thereof, would seem to us to be admissible in view of the fact that a truck was at the scene of the assault and was used to convey Burleson to Taylor, after he was whipped.

In his argument to the jury the district attorney referred to the fact that he had heard rumors of a ringer and that he did not believe there was any ringer on this jury. This remark was excepted to and the court instructed the jury not to consider same, and the district attorney further stated, in substance, that he did not believe there was any man on the jury who was not honest,. but if there was anyone who had his head set and was not open to reason, that his fellowmen could tell when they got into the jury room. Appellant insists that this argument was hurtful to his cause and that for it the case should be reversed. To so conclude necessitates placing upon the words of the district attorney the opposite inference from that which would most readily follow from the language used. We have examined the authorities cited at length by counsel in their able brief but find none holding that language of this character would be just cause for reversal, and this is especially so when the matter deemed hurtful is promptly checked and the court instructs the jury not to let such language affect their verdict. We regret that we cannot agree with counsel in their lengthy contention that for this remark of the district attorney the case should be reversed.

There are other bills of exception complaining of various matters each of which has been read by us but are not deemed of erroneous character. Appellant complains that one of the jurors who sat in the trial of the case was disqualified because of a prejudgement of the case, and the trial judge heard evidence pro and con on this issue. Appellant produced two witnesses who testified that they heard said juror make statements, which they set forth, which indicated that he had formed an opinion. Upon cross-examination each of these witnesses admitted no names were called and that other matters could have been under discussion and that the expressions used by· the jurors might have had reference to other matters. The juror in question testified positively that he had made no such expression, and a third party who was present at the time corroborated said juror in the fact that he had not said what was attributed to him by the appellant's witnesses. Other testimony was adduced showing

the high standing and good character of said juror. We do not think the action of the trial court in refusing a new trial after hearing the testimony, any abuse of his discretion.

The transcript in this case contains over 600 pages, and the bills of exception are very lengthy and numerous. The various statements of fact contain nearly 400 pages and we have gone through all of these in an earnest effort to solve the questions raised both on the facts and under the law, as best we can. We do not believe any reversible error was committed in the trial of the case, and the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—We have re-examined the record relating to those matters disposed of in our original opinion which are challenged as erroneous in the motion for rehearing. Being of opinion proper disposition was made of them we do not feel called upon to write further.

Complaint is made because we did not discuss bill of exception number eleven wherein it is claimed that in argument the district attorney referred to the failure of defendant to testify. This bill was not overlooked. The record contains eighty-three bills of exception. Manifestly it was impracticable to discuss each of them. The language complained of was not a direct reference to defendant's failure to testify; neither do we think it is brought within the rule of indirect reference announced in Boone v. State, 90 Tex. Cr. R. 374, 235 S. W. 582, as follows: "The implication must be a necessary one; that is, one that cannot reasonably be applied to the failure of accused to produce other testimony than his own." Many other parties were with accused who were in a position to have knowledge of the matter referred to by the district attorney. The bill does not certify that these parties were unavailable as witnesses.

In his motion for rehearing appellant asserts that the Court of Criminal Appeals of Texas was illegal and without authority to pass upon any matters at the time the opinion in this case was delivered. He bases this contention on an Act of the 39th Legislature, Chapter 95, page 269, which Act authorized the Governor of the State to appoint a Commission to be composed of two attorneys having the same qualifications fixed

by law for the Judges of the Court of Criminal Appeals, "which Commission shall be for the aid and assistance of said court in disposing of the business before it; and shall discharge such duties as may be assigned it by said Court." Said Act further provides, "All opinions of said Commission shall be submitted to the Court of Criminal Appeals of Texas and shall receive the approval of said court or a majority of them, before handed down as opinions of *said Court,* and *when so approved* and handed down shall have the same weight and legal effect as if *originally prepared* and handed down *by said Court of Criminal Appeals of Texas, and not otherwise.*"

Before said Act was passed the Court of Criminal Appeals was composed of Judges W. C. Morrow, O. S. Lattimore and F. L. Hawkins, the Constitution providing that the Court should be composed of three Judges. The opinion in the instant case was prepared by Judge Lattimore and concurred in by the other two members of the court without participation of the Commissioners. It is appellant's contention that the Commission has become a part of the court in opposition to the Constitution limiting the Court to three members, and therefore that all the Court's acts are void. As we understand it, this contention arises from no wording of the Act creating the Commission, but simply from the manner in which the Court works with and through the Commission. The Court has the Commissioners sit with it when cases are submitted and argument is heard in order that they may have the benefit of argument in all cases, it not being known at such time which cases will be assigned to the Commission; this gives the Court a general knowledge of the issues in cases which are subsequently assigned to the Commission. The Court requires the Commissioners to consult between themselves upon opinions prepared by either of them and if they agree thereon the opinions are submitted to the Court on regular consultation days, the Commissioners being present with the Court at such consultation. In this way the Court has the benefit of the advice of the Commissioners and they likewise have the benefit of the views of the Court upon opinions which may be presented at such consultation. If the opinions prepared by the Commission are approved by the Court they become the opinions of the Court. If the Commissioners themselves do not agree in cases assigned them the case is withdrawn from the Commission and disposed of

by the Court itself, or if the Court does not approve an opinion submitted by the Commission it may be referred back to them for modification to meet the views of the Court or it may be withdrawn and one of the members of the Court prepares the opinion.  The details of the working of the Commission is for the convenience not only of the Court but of the Commission itself and for the mutual benefit of both.

Appellant has furnished us with no authority to support his position and we must confess our inability to discover any merit therein.  Neither of the Commissioners prepared the opinion in the instant case nor participated in any way in the disposition of it.

The validity of the court's judgments based upon opinions prepared by the Commission and approved by the court is not here involved, but as upholding their validity we refer to Henderson v. Beaton, 52 Texas, 29; Stone v. Brown, 54 Texas, 330; McKenzie et al. v. Withers et al., 109 Texas, 255; People v. Hayne, 83 Cal., 117, 17 Am. St. R. 211.  From the syllabus in the latter case we quote: "The power vested in a supreme court commission appointed by the court to examine causes submitted to the court, and to report facts or conclusions in the form of opinions to it for its judgment, is not judicial, within the meaning of the constitution; and when the court retains the inherent power not only to decide but to make all binding orders or judgments in such cases, this constitutes the only exercise of judicial power."

The motion for rehearing is overruled.

*Overruled.*

LATTIMORE, JUDGE.—Appellant files an amended motion asking this court to grant a stay of mandate herein for sixty days so that his application for a writ of certiorari to the Supreme Court of the United States for review of our decision herein, can be acted upon.  It is stated in the motion that the presiding judge of this court being of opinion that no Federal question is involved, refused to grant a writ or error herein, hence the necessity for certiorari and for this motion.

Appellant accompanies his motion by a copy of his petition for the writ of certiorari addressed to the Supreme Court of the United States, and our decision on this motion will necessarily call for some expression of our views relative thereto.

A necessary predicate to invoke Federal review is that the state court have been first given opportunity to pass on the question as to whether there was involved in the particular matter any Federal question. Coffee v. Groover, 123 U. S. 1; Illinois Cent. R. R. v. Mulberry Coal Co., 238 U. S. 275; Cincinnati, etc., Ry. Co. v. Slade, 216 U. S. 78; Winona, etc., Land Co. v. Minnesota, 159 U. S. 540; Bolin v. Nebraska, 176 U. S. 83; Erie Ry. Co. v. Purdy, 185 U. S., 148. This is always true when required under the practice of the particular state. Miller v. Texas, 153 U. S. 535.

While applicant claims that two Federal questions are presented in his petition for certiorari, but one of these was asserted as involving a Federal question when his cause was before the state court, viz: that the act of the legislature in creating a commission to aid the Court of Criminal Appeals of Texas, deprived applicant of a trial under the due process guaranteed by the Fifth Amendment to the Constitution of the United States. The other contention of applicant in his said petition, viz: that the statute defining aggravated assault and that creating the offense of assault with prohibited weapons, are in conflict, was presented to this court in the motion for rehearing herein, but not as in any way contrary to or violative of any Federal statute or provision of the Federal Constitution, and when before us the matter was not considered from any angle as raising a Federal question.

As to the claim of applicant that the legislature by its act creating a commission to aid this court, in any sense destroyed or affected the court's power or right to pass upon appeals regularly before it, and that one whose case on appeal was decided both on original presentation and rehearing, by members of the court itself, without act, interference or intervention of the members of the commission, was thus deprived of a trial in accordance with due process of the law of the land—seems to this court to present so little likelihood of being held by the Supreme Court of the United States as raising a Federal question, that we would not feel warranted in granting a stay of the mandate herein.

As stated above, the supposed conflict of the two state statutes referred to was not presented in this court as involving a Federal question, but if it had, this court would likely have held that a decision of the question of such conflict did not involve a Federal question. This would be our construction of the numerous decisions on that point handed down by the

Supreme Court of the United States. Leeper v. Texas, 139 U. S. 462; Smith v. Jennings, 206 U. S. 276; Medberry v. Ohio. 65 U. S. 413; Layton v. Missouri, 187 U. S. 356. Proper construction of the constitution and laws of a state is not for the Supreme Court Bimetallic Inv. Co. v. State Board of Equalization, 36 S. Ct. 141. The meaning derived by construing together several state statutes is conclusive on the Federal Supreme Court. Int. Harvester Co. v. Kentucky, 234 U. S. 216. The construction of a state statute is not a Federal question. Johnson v. Life Ins. Co. 187 U. S. 491. When the applicability of one state statute depends on the construction of another such law, the state court's action presents no Federal question. Powell v. Brunswick, 150 U. S. 433.

It would seem under ordinary rules of construction that if this court had concluded the two statutes in irreconcilable conflict, it would have given effect to the one last enacted as having by implication repealed the first.

Being unable to agree that applicant's petition for certiorari presents any Federal question, and in view of the fact that if the Supreme Court of the United States is of a different view it has the power to stay the proceedings herein, the applicant's motion will be denied.

*Motion denied.*