## John C. Baker v. The State.

### No. 3040. Decided December 17, 1904.

**1.—Assault to Murder—Jurisdiction—Federal Courts—U. S. Fort—Judicial Notice.**

While the courts of Texas take judicial notice of the cession by the State to the United States of the land conveyed to the latter upon which is situated Fort Brown, they do not take such judicial notice of the precise metes and bounds of said land by its field notes and bounds as run out upon the ground.

**2.—Same—Evidence—Fence or Wall Not Boundary.**

It was error to exclude on the trial of assault to murder testimony of defense showing by actual metes and bounds that the alleged offense was committed within the boundaries of the land conveyed to the United States for which cession was made by the State to Fort Brown, as in that event the Federal Court had exclusive jurisdiction of such offense, and the possessory right of the United States was not fixed by the fence or wall enclosing the land, or that land outside such enclosure was abandoned.

**3.—Same—Cession Only Confers Jurisdiction.**

A different question would be presented if there had been no cession by the State of the place, although it were used and constantly occupied by the United States for a fort, etc. But that question is not before the court.

**4.—Same—Streets—Relinquishment—Waiver.**

Even if the United States had opened streets across the land occupied by Fort Brown, which was acquired by purchase and cession from the State, and had permitted the public to travel these streets, the authority of the United States would not thereby be relinquished, or the exclusive jurisdiction of the Federal courts affected. Brooks, Judge, dissenting.

Appeal from the District Court of Cameron. Tried below before Hon. Stanley Welch.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. N. Parks,* for appellant.—On question of jurisdiction: Lasher v. State, 30 Texas Crim. App., 387; Lot v. State, 18 Texas Crim. App., 627; Williams v. State, 20 Texas Crim. App., 357; Holmes v. State, 20 Texas Crim. App., 509; Koenig v. State, 33 Texas Crim. Rep., 367; Harris v. Hopson, 5 Texas, 529.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault with intent to murder, the penalty assessed being two years confinement in the penitentiary. The evidence shows, if appellant was guilty of the

assault, it was upon a peace officer. The State's evidence shows it occurred about fifteen feet outside of a fence enclosing the property owned and controlled by the United States Government, and occupied by troops of the United States Army. Appellant offered a deed in evidence, conveying this property to the United States Government, signed by James Stillman and Thomas Carson, administrators, with the will annexed, of the estate of Cavazos. This was excluded by the court. Appellant also offered the testimony of two surveyors, J. J. Cocke and E. B. Gore, by whom it was expected to prove that they were practical surveyors: that at the time of the execution of the deed offered in evidence, Cocke made a survey of the tract of land mentioned in the deed, by metes and bounds, and the boundaries were ascertained to extend thirty feet outside of the garrison wall or fence around the Fort Brown property, and embraced the locality where the alleged assault should have occurred. By Gore he would have proved that he was a professional surveyor, in the employment of the United States Government, and that he had recently made a survey of the limits and bounds of Fort Brown and made a map of the same which he would produce, and that said survey embraced the locality where the alleged assault should have taken place. All this testimony was excluded by the court. In preparing these bills of exception, after rejecting those prepared by appellant, the court says: that, construing the rule laid down in Lasher v. State, 30 Texas Crim. App., 387, he took judicial notice of the cession of the property for military purposes to the United States, and that "he judicially knew that the actual possessory limits of Fort Brown is marked on the east by its garrison wall and fence, to which the foot of the streets of Brownsville abut and along which extends a public thoroughfare of the city of Brownsville. The court ruled out all of said testimony offered as irrelevant as he did not consider expert evidence and opinion could create a strip of 'no man's land' thirty feet wide, in a public thoroughfare of a city, a refuge for criminals." The Lasher case is authority sustaining the trial court as to his judicial knowledge, and of course this court, with like judicial knowledge of the fact that the United States Government owns and controls the land upon which Fort Brown is situate. The courts of this State take judicial knowledge of the fact that this land was held,—owned—by the United States by private purchase, by consent of the Legislature of the State. Our Revised Statutes, articles 361–376, provide that where the United States Government acquires land for such purposes in this State by purchase in any way, or by direct cession from the State, it is done with the consent of the Legislature. These articles were enacted to meet the provisions of the Federal Constitution, and to grant authority to the Federal Government to own such land, by consent of the Legislature, in this State for such purpose as that for which they own the land on which Fort Brown is situate. The introduction of the deed, then, for this purpose would have amounted to little, because the court would take judicial knowledge of the fact that the government had the right to control, own and possess the property conveyed in the deed

with exclusive jurisdiction. For an elaborate opinion discussing these matters, see Leavenworth Ry. Co. v. Lowe, 114 U. S., 525. The precise metes and bounds of the property by its field notes as run out upon the ground, the court, however, could not judicially know; and appellant was entitled to have the testimony showing the exact locality of the line as run on the ground. If the alleged offense was committed within the boundaries of the land conveyed to the United States government, under all the authorities the Federal courts would have jurisdiction of offenses committed therein, to the exclusion of the State courts. The trial court, by its qualification, seems to have been under the impression that the extent of the "possessory right" of the United States was fixed by the fence or wall enclosing the land; and that by so enclosing a part of the land, the United States abandoned possession of the land outside the enclosure. We do not believe this position is well taken. If the United States simply had a proprietory right in the land as a citizen by purchase without consent of the Legislature, there might be a question arising on the facts as to easements acquired by the State or the municipality of Brownsville. If the State, or one of its municipalities, had occupied the land as a street or thoroughfare, whether that would be such an occupancy as would make it a street or thoroughfare, so that the sovereignty of the State would be superior to that of the Federal government, might suggest a question in the absence of legislative consent to the purchase. But that question is not here. Under all the authorities, so far as we are aware, both State and Federal on the particular case we have here, the United States has sovereign authority over the lands purchased with and by the consent of the State Legislature, to the extent that all offenses committed within the boundaries of the land conveyed, should be tried in the Federal courts and not the State courts. By reference to Ry. Co. v. Lowe, supra, page 537, we find this language: "These authorities are sufficient to support the proposition which follows naturally from the language of the Constitution, that no other legislative power than that of Congress can be exercised over lands within a State purchased by the United States with her consent for one of the purposes designated; and that such consent under the Constitution operates to exclude all other legislative authority. But with reference to lands owned by the United States, acquired by purchase without the consent of the State, or by cessions from other governments, the case is different. Story, in his Commentaries on the Contitution, says: 'If there has been no cession by the State of the place, although it has been constantly occupied and used under purchase, or otherwise, by the United States for a fort or arsenal, or other constitutional purpose, the State jurisdiction still remains complete and perfect.' And in support of this statement he refers to People v. Godfrey, 17 Johns., 225. In that case the land on which Fort Niagara was erected, in New York, never having been ceded by the State to the United States, it was adjudged that the courts of the State had jurisdiction of crimes or offenses against the laws of the State committed within the

fort or its precincts, although it had been garrisoned by the troops of the United States and held by them since its surrender by Great Britain pursuant to the treaties of 1783 and 1794. In deciding the case, the court said that the possession of the post by the United States must be considered as a possession for the State, not in derogation of her rights, observing that it regarded it as a fundamental principle that the rights of sovereignty were not to be taken away by implication. 'If the United States,' the court added, 'had the right of exclusive legislation over the Fortress of Niagara .they would have also exclusive jurisdiction; but we are of opinion that the right of exclusive legislation within the territorial limits of any State can be acquired by the United States only in the mode pointed out in the Constitution, by purchase, by consent of the Legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings. The essence of that provision is that the State shall freely cede the particular place to the United States for one of the specific and enumerated objects. This jurisdiction cannot be acquired tortiously or by disseisin of the State; much less can it be acquired by mere occupancy, with the implied or tacit consent of the State, when such occupancy is for the purpose of protection.' "

When, therefore, the land has been acquired by purchase by consent of the Legislature, the jurisdiction of the United States becomes exclusive of that of the State. We are not discussing here (for it is not in the case) such reservations as might be properly made by the Legislature in ceding land. But in none of those cases, so far as we have been able to observe, have the courts held the jurisdiction of the United States otherwise than as exclusive as to the trial of offenses committed within the ceded territory. This is placed upon the ground that the State has surrendered its authority of sovereignty to that extent, to the Federal government; that it is among the highest acts of sovereignty to surrender jurisdiction over territorial limits. The cession of the territory, carrying with it exclusive jurisdiction in the Federal court by virtue of its sovereignty, the courts would not be authorized to hold that, occupancy, by sufferance of a part of the land to be used as a street, would oust the Federal government of jurisdiction. Of course, if the United States were, in its sovereign capacity, to relinquish this authority, right and title to the property, we might have a different question. We would be entirely safe in further stating that, if the United States' authorities had opened streets across the land occupied by them, under the purchase by the consent of the Legislature, for its own use, and have even permitted the public to travel these streets, the authority of the Federal government would not be relinquished. They would have the right to use this property for their own convenience within the limits of the cession or grant. The mere fact of opening streets through it, would not forfeit their right of sovereignty or exclusive jurisdiction. Dealing with the question of waiver or abandonment by sovereign government, such waiver cannot be deduced from the

fact that the street is used as a thoroughfare or utilized as such over the government land. The evidence in regard to the location of the actual boundaries should have been permitted; and if there was an offense committed as charged, and it was within the boundaries as located definitely on the ground, the jurisdiction of the United States, under the grant in question would be exclusive of State jurisdiction, and a party would be amenable to punishment in the Federal and not the State courts. See also United States v. Chicago, 7 Howard, 185; Com. v. Clary, 8 Mass., 72; Wills v. State, 3 Heiskell, 141; 10 Am. & Eng. Ency. of Law, p. 1098, and notes, for further collation of authorities.

Under the view we take of the case, the consideration of this question, we believe is sufficient to dispose of this case. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents.