HAWKINS UNDERHILL v. STATE.

No. A-5062.   Opinion Filed July 3, 1925.
(237 Pac. 628.)

Ralph Rawlings and Homer H. Colbert, for plaintiff in error.

George F. Short, Atty. Gen., and Chas. Hill Johns, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment of the county court of Murray county, rendered on the verdict of a jury finding the defendant guilty of unlawful possession of intoxicating liquor. The sentence was confinement for 30 days in the county jail, and a fine of $100.

The undisputed facts are that the chief of police of the city of Sulphur and his assistant saw the defendant in Platt National Park carrying a half gallon bottle which contained corn whisky. The defendant, on seeing the officers, broke the bottle. There was also evidence tending to show an intent to sell the same.

At the close of the state's evidence the defendant moved to dismiss the action on the grounds that the alleged crime as charged in the information was committed within the confines of Platt National Park, which is under the exclusive jurisdiction of the federal government and the federal courts, and not within the jurisdiction of the county court of Murray county. The motion was overruled. The question of jurisdiction was again raised by motion for a new trial.

The alleged want of jurisdiction in the trial court to try and punish the defendant is assigned as error and relied on for a reversal.

Oklahoma was admitted into the Union "on an equal footing with the original states." On her admission she at once became entitled to and possessed all the rights of dominion and sovereignty which belonged to the original states, subject like them only to the Constitution of the United States.

Under the provisions of Act of July 1, 1902, entitled "An act to ratify and confirm an agreement with the Choctaw and Chickasaw Tribes of Indians, and for other purposes" (32 Stat. 641) the two tribes ceded and conveyed to the United States certain lands in the Chickasaw Nation,

to be known as the Sulphur Springs Reservation, and providing, "that in the future the lands and improvements herein mentioned shall be conveyed by the United States to such Territorial or State Organization as may exist at the time when such conveyance is made." 32 Stat. 655 (8 Fed. St. Ann. 987 [U. S. Comp. St. § 5243]).

The Sulphur Springs Reservation was designated the "Platt National Park" by resolution of June 29, 1906 (34 Stat. 837).

When Oklahoma was admitted into the Union, the federal government reserved the right of exclusive control and jurisdiction over the Sulphur Springs Reservation. The part of the Enabling Act (section 7) relating thereto is as follows:

"Provided, that nothing in this act contained shall repeal or affect any act of Congress relating to the Sulphur Springs Reservation as now defined or as may be hereafter defined or extended, or the power of the United States over it or any other lands embraced in the state hereafter set aside by Congress as a national park, game preserve, or for the preservation of objects of archæological or ethnological interest; and nothing contained in this act shall interfere with the rights and ownership of the United States in any land hereafter set aside by Congress as national park, game preserve, or other reservation, or in the said Sulphur Springs Reservation, as it now is or may be hereafter defined or extended by law; but exclusive legislation, in all cases whatsoever, shall be exercised by the United States, which shall have exclusive control and jurisdiction over the same; but nothing in this proviso contained shall be construed to prevent the service within said Sulphur Springs Reservation or national parks, game preserves, and other reservations hereafter established by law, of civil and criminal processes lawfully issued by the authority of said state, and said state shall not be entitled to select indemnity school lands for the thirteenth, sixteenth, thirty-third, and thirty-sixth sections that may be embraced within the metes and bounds of the national park, game preserve, and other reservation or the said Sulphur

Springs Reservation, as now defined or may be hereafter defined." 34 Stat. 272 (8 Fed. St. Ann. 989 [U. S. Comp. St. § 5245]).

The Constitution of Oklahoma acknowledges the sovereignty of the United States over the places named or referred to in the Enabling Act. The state through its legislative assembly has disclaimed any right, title or interest in and to the lands now embraced in what is known as the Platt National Park, adjoining the city of Sulphur in the county of Murray. Section 8184, C. S. 1921, effective Jan. 27, 1911.

The laws above quoted show beyond all doubt that the legislative power of Congress is exclusive over lands within the state of Oklahoma, set aside by Congress as a National Park, game preserve or other reservation, and that the United States government has reserved exclusive control and jurisdiction over the same, leaving to the state only the right to serve civil and criminal process, issued under the authority of the state, on any person amenable to the same within said Sulphur Springs Reservation, national parks, game preserves, and other reservations.

Courts take judicial cognizance of the territorial extent of the sovereignty and jurisdiction exercised by their own government, and the courts of this state will take judicial notice of the fact that the Platt National Park is owned by the United States government, with exclusive control and jurisdiction, and that crimes committed within its boundaries are beyond the jurisdiction of the state courts.

By article 1, § 8, of the Constitution of the United States, it is provided that:

"The Congress shall have power * * * to exercise exclusive legislation in all cases whatsoever * * * over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings."

It is well settled that there must be an actual purchase for the purpose by the United States, and consent by the legislative authority of the state, as conditions precedent to the operation of this provision; that thereupon all jurisdiction is ceded, and passes to the general government, and, aside from an unqualified consent, no declaration or enactment of cession upon the part of the state is requisite or material; that any title of the United States, acquired otherwise within a state, however long continued, and for whatever purpose employed, confers only the right of proprietorship, and is not within the terms of this provision; that therefore any exclusion of state interference must depend upon powers and rights arising outside of that provision. Ft. Leavenworth R. Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264.

In the opinion by Mr. Justice Field, we find this language:

"The reservation which has usually accompanied the consent of the states that civil and criminal process of the state courts may be served in the places purchased, is not considered as interfering in any respect with the supremacy of the United States over them; but is admitted to prevent them from becoming an asylum for fugitives from justice."

In the case of In re Kelly (C. C.) 71 F. 545, it is said:

"The purchase of lands in a state by the general government, with legislative consent, does not, ipso facto, confer upon the general government exclusive jurisdiction, unless the purchase is for a fort or for some other purpose distinctly named in article 1, § 8, of the Constitution; and in order that exclusive jurisdiction may be acquired over the land taken for any other purpose, the act providing therefor and calling for the consent must unequivocally declare that exclusive jurisdiction is intended and necessary, or such necessity must be manifest from the purpose of the act."

And holding, in substance, that a state has jurisdic-

tion of an offense committed at a national soldiers' home, since the acts of Congress provided for these homes do not contemplate works or establishments for the public safety or defense, or for military purposes and contain no declaration of the necessity of exclusive legislation over the lands used for homes, nor any provision incompatible with the laws of the locality.

In Lasher v. State, 30 Tex. App. 387, 17 S. W. 1064, 28 Am. St. Rep. 922, it was held that:

"In a cession to the United States by the state of land for a military post, a reservation of 'concurrent jurisdiction' to serve state civil and criminal process in the ceded place does not defeat the exclusive jurisdiction of the United States over the ceded place, * * * and the state courts have no jurisdiction of crimes committed therein."

See, also, Baker v. State, 47 Tex. Cr. R. 482, 83 S. W. 1122, 122 Am. St. Rep. 703, 11 Ann. Cas. 751; U. S. v. Meagher (C. C.) 37 F. 875; U. S. v. Cornell, 2 Mason 60, Fed. Cas. No. 14867.

A different rule applies with reference to the jurisdiction of state courts of offenses committed on Indian reservations from that which obtains with reference to military reservations. Indian reservations are not specifically enumerated or named in the provision of the Constitution of the United States, above referred to, wherein Congress retains absolute jurisdiction over certain lands and places, and the federal courts have uniformly held:

"That where a state was admitted into the Union, and the Enabling Act contained no exclusion of jurisdiction as to crimes committed on an Indian reservation by others than Indians or against Indians, the state courts were vested with jurisdiction to try and punish such crimes." U. S. v. McBratney, 104 U. S. 621, 26 L. Ed. 869; Draper v. U. S., 164 U. S. 240, 17 S. Ct. 107, 41 L. Ed. 419, and cases there cited; Ward v. Race Horse, 163 U. S. 504, 16 S. Ct. 1076, 41 L. Ed. 244; State v. Tully, 31 Mont. 365, 78 P. 760, 3 Ann. Cas. 824.

See, also, Pablo v. People, 23 Colo. 134, 46 P. 636, 37 L. R. A. 636; State v. Doxtater, 47 Wis. 278, 2 N. W. 439.

We may observe also that, under Act of Congress, approved March 4, 1909 (Fed. St. Ann. 1909, Supp. 485 [U. S. Comp. St. § 10462]), modifying, amending, and revising the penal laws of the United States, and effective January 1, 1910, any act which is not specifically made an offense by the laws of the United States, but which is an offense under the laws of the state wherein committed, is also an offense under the laws of the United States, and punishable by the same penalties which are inflicted under the laws of the state. In the language of Mr. Chief Justice White:

"Where no law of the United States has expressly provided for the punishment of offenses committed on reservations, all acts done on such reservations which are made criminal by the laws of the several states are left to be punished under the applicable state statutes." U. S. v. Press Publishing Co., 219 U. S. 1, 31 S. Ct. 212, 55 L. Ed. 65, 21 Ann. Cas. 942.

It follows from what has been said that, where a criminal offense is committed within the boundaries of Platt National Park, the federal courts have jurisdiction of a prosecution therefor to the exclusion of the state courts.

The judgment of the lower court is reversed and the case remanded, with direction to dismiss.

BESSEY, P. J., and EDWARDS, J., concur.