### ALBERT CURRY v. THE STATE.

No. 10491. Delivered November 28, 1928.
Rehearing denied January 9, 1929.

The opinion states the case.

*Jefferson D. Todd* of Corpus Christi, for appellant.

*Sam D. Stinson,* State's Attorney and *Robt. M. Lyles,* Assistant State's Attorney, for the State.

MARTIN, JUDGE.—Appellant was convicted in the County Court of Nueces County of the offense of unlawfully seining within certain prohibited waters and a fine of $100.00 was assessed against him.

The proven facts of this case show that the United States Government had acquired two adjoining tracts of land in 1907 at Port Aransas, one by patent from the State of Texas, and the other by purchase from a private corporation. This land on the date of the alleged offense was shown to be a United States military reservation, in use as such and being in the actual custody and control of the War Department of the United States Government. It is further shown that the alleged offense was committed within the boundaries of said reservation. Under these facts appellant presents the point that the County Court of Nueces County was without jurisdiction, same being vested exclusively in the Federal Courts by virtue of Art. 1, Paragraph 8, Clause 17, of the United States Constitution, reading as follows:

"Congress shall have power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten miles 'square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-yards, and other needful buildings;—"

The proper solution of this interesting and important question turns upon a construction of Arts. 361 to 376 both inclusive, R. S. of 1895, relating to "Cession of lands to the United States."

Art. 361 reads as follows:

"The United States may purchase, acquire, hold, own, occupy and possess such lands within the limits of this State as they shall deem expedient and may seek to occupy and hold as sites on which to erect and maintain lighthouses, forts, military stations, magazines, arsenals, dock-yards, custom-houses, postoffices and all other needful public buildings, within the purview of the eighteenth clause of the eighth section of the first article of the constitution of the United States; and the consent of the legislature of the state of Texas is hereby expressly given to any such purchase or acquisition made in accordance with the provisions of this title."

The succeeding articles down to Art. 374 relate chiefly to the subject of condemnation of lands by the United States Government, and procedure in such cases.

Arts. 374 and 375 are as follows:

"Art. 374. Whenever the United States shall acquire any lands in this state, for any of the purposes and in either of the modes authorized by this title, and shall desire to acquire constitutional jurisdiction over such lands for said purposes, it shall be lawful for the governor of this state, in the name and behalf of the state, to cede to the United States exclusive jurisdiction over any lands so acquired, when application may be made to him for that purpose, which application shall be in writing and accompanied with the proper evidence of such acquisition, duly authenticated and recorded, containing or having annexed thereto an accurate description by metes and bounds of the lands sought to be ceded."

"Art. 375. No such cession of jurisdiction shall ever be made, except upon the express condition that the State of Texas shall retain concurrent jurisdiction with the United States over the lands so ceded, and every portion thereof, so far, that all process, civil or criminal, issuing under the authority of this state, or any of the courts or judicial officers thereof, may be executed by the proper officers of this state, upon any person amenable to the same, within the limits of the land so ceded, in like manner and with like effect as if no such cession had taken place; and such condition shall be always inserted in any instrument of cession under the provisions of this title."

The record in the instant case is bare of any proof of cession of jurisdiction by the Governor of Texas under Arts. 374 and 375, supra, which were in force when the United States Government acquired the land in question and which have been carried forward without substantial change into the codification of 1911 and are now embodied in the latest codification as Art. 5247, R. S. 1925. The statement of facts shows a transfer of the legal title to the United States Government but goes no further. However, this is a matter of which this Court will take judicial notice without such proof. "Who is the sovereign de jure or de facto of a territory is not a judicial but a political question, the determination of which by the legislative and executive departments of any government conclusively binds the judges as well as all other officers and citizens and subjects of that government. . . . All courts of justice are bound to take judicial notice of the territorial extent of the juris-

diction exercised by the government whose laws they administer, or of its recognition or denial of the sovereignty of a foreign power, as appearing from the public acts of the Legislature and executive, although these acts are not formally put in evidence or in accord with the pleadings." Jones v. U. S., 137 U. S. 202–224, 34 L. Ed. 691. See also Lasher v. State, 30 Tex. Crim. Rep. 387 and Baker v. State, 47 Tex. Crim. Rep. 482. The authority of Jones v. U. S., supra, further states:

"In the ascertainment of any facts of which they are bound to take judicial notice, as in the decision of matters of law which it is their office to know, the judges may refresh their memory and inform their conscience from such sources as they deem most trustworthy."

The most trustworthy sources of information available show no cession of jurisdiction to the Federal Government by the Governor of Texas over the territory in question. We judicially know that none such has been made. Such transfer of jurisdiction may arise, however, by implication of law. Under the language of the United States Constitution quoted above a purchase of land with the consent of the Legislature will confer the exclusive right to legislate by the United States Government over it, which necessarily carries with it the privilege and right of exclusive jurisdiction of its Courts. 16 C. J. 222. United States v. Tucker, 122 Fed. 518. Authorities supra; Leavenworth R. R. Co. v. Lowe, 114 U. S. 525; In re Kelly, 71 Fed. 545, 549; U. S. v. Holt, 168 Fed. 141, judgment affirmed, 218 U. S. 245, 54 L. Ed. 1021; see annotations to above clause of U. S. Constitution, Vol. 10, U. S. Compiled Statutes, 1916, beginning at Page 13514, where full collation of authorities will be found.

All authorities uniformly hold that the United States Government has sovereign authority and exclusive jurisdiction over all lands acquired and used by it for one of the purposes mentioned in the United States Constitution, in all cases where jurisdiction has been expressly ceded by the State, or where same exists by necessary implication arising from consent of the State to the purchase of such land. In either of such cases the right to prosecute and punish for crime exists only in the United States Government. From what has been said it necessarily follows that the State Court which tried appellant had jurisdiction unless same has been transferred by implication arising from Legislative consent to the purchase in question, as embodied in the following language of Art. 361, supra:
"And the consent of the Legislature of the state of Texas is hereby

expressly given to any such purchase or acquisition made in accordance with the provisions of this title."

No express cession of jurisdiction under Arts. 374 and 375 being in existence in this case, we have for determination the question of whether or not the Legislature has intended to provide a second method of ceding exclusive jurisdiction and the sovereign authority or Texas over land acquired by the United States Government in the manner provided in said articles supra. Otherwise expressed, is the said consent given by the Legislature conditioned upon its becoming operative only and when the Governor of Texas expressly cedes exclusive jurisdiction upon the conditions mentioned in Arts. 374 and 375, supra, or is the consent above mentioned an unconditional one, so as to raise an implication of the transfer of exclusive jurisdiction without a specific cession of same by the Governor of this State.

In construing a statute the Legislative intent is to be determined from a general view of the act, with reference to the subject matter to which it applies, and the particular topic under which the language is found. 36 Cyc. 1128.

Title XVI of the 1895 statute which contains the articles above mentioned deals with the subject of cession of jurisdiction by this State. There is neither constitutional nor statutory inhibition against ownership of land by the United States Government in Texas. Consent of its Legislature was not necessary as a precedent for such ownership, such being necessary only to a transfer of exclusive jurisdiction. People v. Humphrey, 9 Am. Rep. 94. The right to withhold consent altogether carries with it necessarily the right to annex such conditions as it sees fit to the giving of such consent. Evidently the Legislature had in mind only the question of cession of jurisdiction in the enactment of the articles in question, as legislation on the question of ownership of land in Texas by the United States was useless and wholly unnecessary. If it intended that cession of jurisdiction by implication should pass under Art. 361, R. S. 1895, then the addition of Arts. 374 and 375 granting to the Governor the right to cede same was futile and useless. If jurisdiction passed by implication under the first mentioned article, it did so unencumbered by the conditions of concurrent jurisdiction to serve criminal and civil process as expressed in Art. 375 of said title. That such was not the intent of the Legislature we think is clear from reading the entire enactment upon the subject under consideration. Rather we think the Legislature intended to give its consent to the cession of jurisdiction to become operative only

when the Governor legally ceded same upon the conditions mentioned in Arts. 374 and 375. In other words complete consent of the State which carries with it exclusive jurisdiction over such land as above stated, has been withheld unless and until the Governor of this State under the terms of Arts. 374 and 375, R. S. 1895, makes a transfer of same. Our reasoning in this regard is supported by the Circuit Court of Appeals, Fifth Circuit, in the case of Brown v. U. S., 257 Fed. 46, in which the said articles of the Texas statute received consideration and discussion.

Nor do we regard the Texas cases of Lasher and Baker, supra, in conflict with these views. In the Lasher case the facts disclose an offer to prove an express cession of jurisdiction by the Governor. The point herein presented and decided was not discussed in the Baker case. The Court appears to have assumed that complete consent of the Legislature had been given to the cession of jurisdiction. Whether the conditional consent mentioned in Art. 361, supra, had matured into a full and complete one by the happening of the contingency mentioned in the succeeding articles, does not appear in the statement of the case. Unless an express cession of jurisdiction had been made by the Governor of Texas, as demanded by Arts. 374 and 375, supra, the Baker case is in conflict with the instant case and is in our opinion erroneous.

Since we are of the opinion that only one method of transferring exclusive jurisdiction to the United States Government over land purchased and used by it under the clause of the Federal Constitution already mentioned has been provided by our laws, and such method not having been followed with regard to the land under consideration, the jurisdiction of our State Courts over such remains, and this judgment must be affirmed, and it is accordingly so ordered.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Counsel for the appellant, in challenging the correctness of the conclusion announced in the original opinion, takes occasion to urge that the court "through the elected judges" should take cognizance of the record. Pertinent to that request and the implied assumption that the matter has not had the consideration of the elected judges, it is deemed not inappropriate that the following statement touching the pro-

cedure of the Court of Criminal Appeals be· embraced in this opinion: To aid the Court of Criminal Appeals, the Legislature has authorized and the Governor has appointed two lawyers possessing the qualifications and experience of the judges of the Court of Criminal Appeals as required by the Constitution. In the hearing of all cases submitted to the Court of Criminal Appeals, the Commissioners sit with the judges and hear the arguments made. In the distribution of the cases after submission, certain cases are referred for special examination to each of the judges of the Court of Criminal Appeals and to each of the Commissioners. After the opinions are written by the judges and the Commissioners there is held one day in each week consultation in which the judges and Commissioners all participate and in which the opinions written are read and considered, and no opinion of the Commissioners is handed down until it has the sanction and approval of all the judges of the Court of Criminal Appeals. Jackson v. State, 280 S. W. Rep. 202.

In his motion counsel for the appellant takes note of the fact that before its decision the appeal remained upon the ·docket for an unusual length of time. Accounting for this it may be said that while the offense was trivial, the legal question involved was deemed important and intrinsic for solution, and the court was hesitant to decide it without an exhaustive inquiry into the subject involved and the precedents and statutes which might bear upon it. The opinion rendered reflects not the judgment of the Commission alone but the judgment of all the elected members of the Court of Criminal Appeals with each of whom, from time to time anterior to the final announcement of the result, the members of the Commission has conferred. The result declared has not only the sanction of the elected members of the court but is the result of their best judgment after the most careful investigation and consideration of which they are capable. That their views upon the subject expressed in the opinion and those of the learned counsel for the appellant do not coincide is a subject of regret upon the part of the members of the court as well as the Commissioners. Counsel's views may be sounder, but the court having reached a different conclusion upon the original hearing and remaining unconvinced of its error after a re-examination of the subject in the light of the exhaustive motion for rehearing,·is constrained, without writing further upon the subject, to adhere to the conclusion originally reached and heretofore announced and to overrule the motion for rehearing. It is so ordered.

*Overruled.*