2010 OK CR 16

**Donald Ray WACKERLY, II, Petitioner,**

v.

**STATE of Oklahoma, Respondent.**

**No. PCD–2010–530.**

Court of Criminal Appeals of Oklahoma.

July 29, 2010.

James A. Drummond, Attorney at Law, Norman, OK, attorney for petitioner on appeal.

W.A. Drew Edmondson, Oklahoma Attorney General, Seth S. Branham, Assistant Attorney General, Oklahoma City, OK, attorneys for state on appeal.

## OPINION DENYING SECOND APPLICATION FOR POST–CONVICTION RELIEF, MOTION FOR DISCOVERY, MOTION FOR EVIDENTIARY HEARING AND MOTION TO DEFER SCHEDULING OF EXECUTION DATE

A. JOHNSON, Vice–Presiding Judge.

¶ 1 Before the Court is Petitioner Donald Ray Wackerly's second application for post-conviction relief, motion for discovery, motion for evidentiary hearing and motion to defer scheduling of an execution date. A jury convicted Wackerly in 1998 in the District Court of Sequoyah County, Case No. CF–96–349, of the first degree murder of Pan Sayakhoummane. The jury assessed a sentence of death.[1] Since then Wackerly has challenged his Judgment and Sentence on direct appeal,[2] in collateral proceedings in this court,[3] and in habeas corpus proceedings in federal court.[4] All of these challenges have proven unsuccessful and the State of Oklahoma has asked this Court to set an execution date.

¶ 2 The Post–Conviction Procedure Act governs post-conviction proceedings in this State. 22 O.S.Supp.2006, §§ 1080–1089. Regarding capital cases, it provides in relevant part:

1. Wackerly's jury found two aggravating circumstances to support the death penalty: (1) that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution; and (2) the existence of a probability that Wackerly would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, § 701.12(5) & (7). Wackerly's jury also convicted him of first degree robbery (Count 2). Wackerly's jury assessed a punishment of life imprisonment on Count 2.

2. This Court affirmed Wackerly's Judgment and Sentence in *Wackerly v. State*, 2000 OK CR 15, 12 P.3d 1. Certiorari was denied by the United States Supreme Court in *Wackerly v. Oklahoma*, 532 U.S. 1028, 121 S.Ct. 1976, 149 L.Ed.2d 768 (2001).

3. Wackerly's original application for post-conviction relief was denied in an unpublished opinion. *See Wackerly v. State*, Case No. PC–2000–350 (Oct. 16, 2000).

4. Wackerly sought a writ of habeas corpus in the United States District Court for the Western District of Oklahoma, which was denied. *See Wackerly v. Sirmons*, No. CIV–01–567–FHS–KEW, 2007 WL 963210 (E.D.Okla. March 27, 2007) (unpublished). Wackerly appealed the federal district court's decision and the Tenth Circuit Court of Appeals denied relief in *Wackerly v. Workman*, 580 F.3d 1171 (10th Cir.2009). The United States Supreme Court denied certiorari in *Wackerly v. Workman*, —— U.S. ——, 130 S.Ct. 3387, 177 L.Ed.2d 308 (2010).

[I]f a subsequent application for post-conviction relief is filed after filing an original application, the Court of Criminal Appeals may not consider the merits of or grant relief based on the subsequent ... application unless:

 a. the application contains claims and issues that have not been and could not have been presented previously in a timely original application or in a previously considered application filed under this section, because the legal basis for the claim was unavailable, or

 b. (1) the application contains sufficient specific facts establishing that the current claims and issues have not and could not have been presented previously in a timely original application or in a previously considered application filed under this section, because the factual basis for the claim was unavailable as it was not ascertainable through the exercise of reasonable diligence on or before that date, and (2) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the alleged error, no reasonable fact finder would have found the applicant guilty of the underlying offense or would have rendered the penalty of death.

22 O.S.Supp.2006, § 1089(D)(8). Further, this Court's rules provide that "[n]o subsequent application for post-conviction relief shall be considered by this Court unless it is filed within sixty (60) days from the date the previously unavailable legal or factual basis serving as the basis for a new issue is announced or discovered." Rule 9.7(G)(3), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App (2010).

¶ 3 Wackerly claims that the State of Oklahoma lacked jurisdiction to prosecute him for the murder of which he was convicted because the crime occurred on land that was under the exclusive jurisdiction of the United States. He also claims that prior trial counsel, appellate counsel, post-conviction counsel, and federal habeas counsel were all constitutionally ineffective for not discovering and raising this claim.

 ¶ 4 Ordinarily, this claim would be barred because the factual and legal bases upon which it is based were available and could have been presented in a timely original application. 22 O.S.Supp.2006, § 1089(D)(8). Furthermore, examination of the evidentiary materials submitted in support of Wackerly's application shows that the legal and factual bases of this claim were available much earlier than sixty days before the filing of the instant application for post-conviction relief.[5] Ordinarily, such an untimely filing would bar the current claim. Rule 9.7(G)(3), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App (2010). Nevertheless, we have recognized that "issues of subject matter jurisdiction are never waived and can therefore be raised on collateral appeal." *Wallace v. State,* 1997 OK CR 18, ¶ 15, 935 P.2d 366, 372. Consequently, we address Wackerly's jurisdictional claim.

¶ 5 Wackerly contends that the murder for which he was convicted occurred on the bank of the Arkansas River, on property purchased by the United States for the W.D. Mayo Lock and Dam Project, which is operated by the Army Corps of Engineers. Wackerly argues that because the federal government owns the property on which the murder occurred, the murder occurred within the "special maritime and territorial jurisdiction of the United States," as defined in 18 U.S.C. § 7(3). Therefore, according to Wackerly, the United States retains sole jurisdiction to prosecute this case.[6]

---

**5.** Wackerly's second application for post-conviction relief, i.e., the current application, was filed on June 7, 2010.

**6.** Title 18 U.S.C. § 7(3) defines the United States' special maritime and territorial jurisdiction as: [a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

¶ 6 Article I, Section 8, Clause 17 of the United States Constitution gives Congress the right "to exercise exclusive Legislation" over all places purchased by the United States with the consent of the legislature of the state where the place is located for the erection of forts, magazines, arsenals, dockyards, and "other needful [b]uildings."[7] *State v. Cline*, 1958 OK CR 21, ¶¶ 7–10, 322 P.2d 208, 212–13; *United States v. Penn*, 48 F. 669, 670 (C.C.E.D.Va.1880). The right of exclusive legislation is the same as exclusive jurisdiction. *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652, 50 S.Ct. 455, 456, 74 L.Ed. 1091 (1930); *Underhill v. State*, 1925 OK CR 355, 31 Okl.Cr. 149, 237 P. 628 (syllabus); *see also, United States v. Goings*, 504 F.2d 809, 811 (8th Cir.1974); *Curry v. State*, 111 Tex. Crim. 264, 12 S.W.2d 796, 798 (Tex.Crim. App.1928); *United States v. Wurtzbarger*, 276 F. 753, 755 (D.Or.1921). Thus, in order for the United States to exercise exclusive jurisdiction to prosecute crimes committed on property purchased by it, the legislature of the state where the property is located must have given its explicit consent to cede jurisdiction. *Cline*, 1958 OK CR 21, ¶¶ 8–9, 322 P.2d at 212–13; *see also United States v. Tucker*, 122 F. 518, 520–21 (W.D.Ky.1903) (finding exclusive federal jurisdiction over land purchased by United States for dam and lock in Green River, but only on showing that Kentucky Legislature passed act ceding jurisdiction); *Penn*, 48 F. at 669–70 (finding no federal jurisdiction for prosecution of petty larceny at Arlington National Cemetery where United States purchased property for cemetery at tax sale, but Virginia never ceded jurisdiction). Otherwise, the state's jurisdiction remains intact and the United States holds the property as does any other owner. *Underhill*, 1925 OK CR 355, 31 Okl.Cr. at 153, 237 P. at 629; *Penn*, 48 F. at 670; *see*

*also Ryan v. State*, 188 Wash. 115, 61 P.2d 1276, 1281 (1936) (interpreting Article I, Section 8, Clause 17 to mean that "when the land is acquired [by the United States] for a purpose not within that clause, in any manner other than by purchase with the consent of the state, then the United States holds the land just as any other proprietor does, except that the land may not be taxed by the state").

¶ 7 The Oklahoma Legislature has consented by statute to cede jurisdiction to the United States over lands purchased by the United States for the purposes enumerated in Article I, Section 8, Cl. 17, and for the additional purpose of "irrigation or drainage projects." 80 O.S.2001, § 1.[8] Therefore, for the United States to exercise exclusive jurisdiction over the W.D. Mayo Lock and Dam Project, the property must have been purchased for use as a fort, magazine, arsenal, dock-yard, or irrigation or drainage project.

¶ 8 Exhibit 11 to Wackerly's application is a copy of what appears to be a Corps of Engineers document purporting to describe the status and purpose of the McClellan–Kerr Arkansas River Navigation System, including the W.D. Mayo Lock and Dam Project. According to this document, the purpose of the project is "[f]lood control and navigation." The document also states:

> The project consists of bank stabilization and channel rectification as required for the stabilization of the river channel and for the establishment of a navigation channel with a minimum depth of 9 feet and a minimum width of 250 feet. The bank stabilization also protects the critical location on the right bank of the Arkansas River in the vicinity of Braden's Bend, Oklahoma, as authorized by the Flood

---

7. Article I, Section 8, Clause 17 states in relevant part that Congress shall have the power to

> exercise exclusive Legislation ... over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[.]

8. Title 80 O.S. § 1 was enacted in 1910. The latest version, as amended in 1993, states in relevant part:

> The consent of this state is hereby given, in accordance with Section 8 of Article I of the Constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this state required for sites for custom houses, post offices, arsenals, forts, magazines, dockyards, military reserves, irrigation or drainage projects, municipal water facilities or for needful public buildings.

80 O.S.2001, § 1(A).

Control Act of June 30, 1948, Public Law 80–858.

A reasonable reading of this document suggests that the McClellan–Kerr Arkansas River Navigation System, of which the W.D. Mayo Lock and Dam Project is a component part, is a system intended to control watershed drainage into the Arkansas River in order to maintain the river as a navigable channel. Assuming, without deciding, therefore, that the crime actually occurred on property owned by the United States that was part of the W.D. Mayo Lock and Dam project, and assuming further that the W.D. Mayo properties are part of a drainage project intended to maintain the Arkansas River as a navigable channel, as Wackerly asserts, it would seem that Oklahoma ceded jurisdiction over the property under the provisions of 80 O.S.2001, § 1. Nevertheless, for the reasons set out below, we find that the United States does not exercise exclusive jurisdiction over the property.

¶ 9 In the River and Harbor Act of 1894, now codified at Title 33 U.S.C. § 1, Congress delegated to the Secretary of the Army the duty to prescribe regulations and rules for:

the use, administration, and navigation of the navigable waters of the United States as in his judgment the public necessity may require for the protection of life and property, or of operations of the United States in channel improvement, covering all matters not specifically delegated by law to some other executive department.

In compliance with this statutory directive, the Secretary promulgated the following regulation, now incorporated into the Code of Federal Regulations:

(a) Except as otherwise provided in this part or by Federal law or regulation, *state and local laws and ordinances shall apply on project lands and waters.* This includes, but is not limited to, state and local laws and ordinances governing:

(1) Operation and use of motor vehicles, vessels, and aircraft;

(2) Hunting, fishing and trapping;

(3) Use or possession of firearms or other weapons;

(4) Civil disobedience and *criminal acts;*

(5) Littering, sanitation and pollution; and

(6) Alcohol or other controlled substances.

(b) *These state and local laws and ordinances are enforced by those state and local enforcement agencies established and authorized for that purpose.*

36 C.F.R. § 327.26 (emphasis added).[9]

¶ 10 Through this regulation, duly promulgated by the Secretary of the Army acting on behalf of the United States, on authority delegated by Congress, the United States consented to state jurisdiction over criminal acts committed on Corps of Engineers project waters and properties. Assuming, therefore, that the murder in this case occurred on a Corps of Engineers property, which is part of a navigable river and channel maintenance flood control project, as Wackerly asserts, the State of Oklahoma properly exercised jurisdiction over the situs of the crime by express consent of the United States. There is no merit to Wackerly's claim that Oklahoma's jurisdiction to prosecute this case was displaced by exclusive federal jurisdiction.

¶ 11 Because we find that the State of Oklahoma properly exercised jurisdiction in the prosecution of this matter, there is also no merit to Wackerly's claim that prior counsel were ineffective for not raising this jurisdictional claim in previous proceedings. *See, e.g., Frederick v. State,* 2001 OK CR 34, ¶ 189, 37 P.3d 908, 955 ("[i]t is well established that where there is no error, one cannot predicate a claim of ineffective assistance of counsel upon counsel's failure to object").

---

9. Title 36 of the Code of Federal Regulations governs "Parks, Forests and Public Property." Section 327.26 is found in this title under Chapter III (Corps of Engineers, Department of the Army), Part 327 (Rules and Regulations Governing Public Use of Water Resource Development Projects Administered by the Chief of Engineers).

*CONCLUSION*

¶ 12 After carefully reviewing Wackerly's subsequent application for post-conviction relief, we conclude that he is not entitled to relief. Accordingly, his application is **DENIED**. Further, his motions for an evidentiary hearing, discovery and to stay setting an execution date are denied. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, P.J., LUMPKIN and LEWIS, JJ.: concur.